1  Arielle I. Goren (SBN 331822)
2  arielle.goren@dinsmore.com
   **DINSMORE & SHOHL LLP**
3  550 South Hope Street, Suite 1765
   Los Angeles, CA 90071
4  Tel (213) 596-0010
5  Fax (619) 400-0501

6
   Attorneys for Plaintiff
7  Foshan Huiya Ziyi E-commerce Co., Ltd.

8

9              **UNITED STATES DISTRICT COURT**

10            **CENTRAL DISTRICT OF CALIFORNIA**

11                   **SOUTHERN DIVISION**

12                                          Case No.
13  FOSHAN HUIYA ZIYI E-COMMERCE
    CO., LTD.,                              **DECLARATORY JUDGMENT**
14                                          **COMPLAINT FOR PATENT NON-**
                        Plaintiff,          **INFRINGEMENT AND PATENT**
15                                          **INVALIDITY**
    v.
16                                          **JURY TRIAL REQUESTED**
    HYPER ICE, INC. and HYPER ICE IP
17  SUBCO, LLC

18                      Defendants.
19
20

21        Plaintiff Foshan Huiya Ziyi E-commerce Co., Ltd ("Plaintiff" or "FVZ"), by and

22  through its undersigned counsel, states as follows for its Complaint against Defendant

23  Hyper Ice, Inc. and Hyperice IP Subco, LLC (collectively, "Defendants" or

24

25  "Hyperice"):

26

27

28

## I.    **INTRODUCTION**

1.    In response to Defendants' patent assertion against Plaintiff, Plaintiff brings this civil action seeking a declaratory judgment of invalidity and non-infringement of Defendants' U.S. Patent No. 12,208,051 ("'051 Patent"). A copy of the '051 Patent is attached hereto as **Exhibit A**.

2.    On March 12, 2025, Plaintiff received a Notice from Amazon.com ("Amazon"), stating that a patent infringement report had been filed by Defendants against several massagers sold by Plaintiff through Amazon based on alleged infringement of the '051 Patent.

3.    Defendants' objectively baseless infringement report to Amazon has caused and continues to cause (or at a minimum, risks causing) significant harm to Plaintiff vis-à-vis Plaintiff's relationship with Amazon.

4.    Moreover, Defendants' objectively baseless infringement report to Amazon has caused and continues to cause (or at a minimum, risks causing) significant harm to Plaintiff since Plaintiff's products could be delisted from Amazona at any time: something that will result in lost sales and a further loss of goodwill.

5.    As discussed more fully below, Defendants' infringement report to Amazon was wholly without merit as Plaintiff's products do not meet each and every limitation of a claim under the '051 Patent and, in any event, the '051 Patent is invalid under at least 35 U.S.C. §§ 102, 103, and/or 112.

6.    To remove the cloud of false accusations and uncertainty that Defendants have cast over Plaintiff's products and its relationship with Amazon, Plaintiff brings this action to seek a declaration resolving the concrete and immediate controversies between the parties over: (a) the validity; and (b) alleged infringement; of the '051 Patent.

## II.    **NATURE OF THE ACTION**

7.    This action seeks a declaratory judgment of patent non-infringement and invalidity under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the United

1    States Patent Laws, 35 U.S.C. § 101 *et seq*.

2        8.    More specifically, Plaintiff seeks a declaratory judgment that

3    Defendants' '051 Patent is invalid under at least 35 U.S.C. §§ 102, 103 and/or 112,

4    along with related relief stemming from Defendants' actions.

5        9.    Plaintiff further seeks damages for Defendants' tortious activities and

6    unfair competition under the law of the State of California, as well as Defendant's

7    anticompetitive conduct under the Sherman Act.

8                        III.    **PARTIES**

9        10.    Plaintiff is a limited liability company organized and existing under the

10    laws of the People's Republic of China, having its principal place of business at F109-

11    3, NO. 1553, LISHUI TOWN, NANHAI DISTRICT, FOSHAN CHINA 528000.

12        11.    Plaintiff does business in this District through Amazon, an online

13    marketplace, using the name FVZ.

14        12.    Upon information and belief, Defendant HYPER ICE, INC is a

15    corporation organized under the laws of the State of California with its principal place

16    of business located at 525 Technology Drive, Suite 100, Irvine, California 92618.

17        13.    Upon information and belief, Defendant HYPERICE IP SUBCO, LLC is

18    a limited liability company organized under the laws of the State of Delaware with a

19    principal place of business located at 525 Technology Drive, Suite 100, Irvine,

20    California 92618.

21        14.    Upon information and belief, Hyperice IP Subco, LLC, a wholly owned

22    subsidiary of Hyper Ice, Inc., is the assignee and owner of the '051 Patent. Hyper Ice,

23    Inc. is the exclusive licensee that has been granted the express, irrevocable right to,

24    *inter alia*, sublicense, enforce, and defend the Hyperice Patent.

25                    IV.    **JURISDICTION AND VENUE**

26        15.    This action arises under the Declaratory Judgment Act, 28 U.S.C. §2201,

27    *et seq.*, and the United States Patent Act, 35 U.S.C. §1, *et seq.*

28        16.    This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § § 1331, 1338, 2201, and 2202 because an actual case or controversy exists between the Parties regarding the subject matter of this action, and the Court would have subject matter jurisdiction over this action if Defendants initiated suit for patent infringement.

17.     An actual case or controversy exists between the parties to this action.

18.     Defendants' actions have caused and continue to cause significant harm to Plaintiff as the Accused Products have been removed from Amazon through the enforcement of the '051 Patent. Defendants' actions thereby give rise to an actual controversy under 28 U.S.C. §§ 2201 *et. seq.*

19.     On information and belief, the Court has personal jurisdiction over Hyper Ice, Inc. since Hyper Ice, Inc. is domiciled in California and within this judicial district.

20.     On information and belief, the Court has personal jurisdiction over Hyperice IP Subco, LLC since it is a wholly-owned subsidiary of Hyper Ice, Inc. and operates solely as a holding company for patents acquired by Hyper Ice, Inc.

21.     Upon information and belief, Hyper Ice, Inc. and Hyperice IP Subco, LLC have filed multiple patent enforcement lawsuits in various jurisdictions as joint co-plaintiffs, including in this jurisdiction.

22.     Venue is proper in this Court under 28 U.S.C. §1391(b)(1), because Defendants both reside in this district as residency is defined in 28 U.S.C. § 1391(c)(2).

23.     Venue is also proper in this Court under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim (*i.e.*, Defendants' filing a patent infringement report through Amazon) occurred in this judicial district.

## V.     **FACTUAL OVERVIEW**

### A.     **The Plaintiff's Non-Infringing Accused Products**

24.     As noted above, Plaintiff sells various massagers through its "FVZ-US" Amazon storefront, namely:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(i)    Model No. JA-G4 sold under Amazon Standard Identification Number ("ASIN") B0CNKFX79R (the "10mm Massager") as shown in the exemplary image below:



and

(ii)    Model No. JA-G5 sold under ASIN B0D8VN56S1 (the "12mm Massager") as shown in the exemplary image below:



(collectively, the "Accused Products").

5
DECLARATORY JUDGMENT COMPLAINT

25.     On or about March 12, 2025, Plaintiff received a notice from Amazon stating that the Accused Products were accused of infringing the '051 Patent in a report filed by Defendants. A copy of the notice e-mail sent by Amazon to Plaintiff is attached hereto as **Exhibit B** (the "Notice").

26.     In the Notice, Amazon informed Plaintiff that the rights owner of the '051 Patent is Defendant Hyperice and its email address is barnold@hyperice.com. *See* **Exhibit B**.

27.     Amazon's online marketplace constitutes Plaintiff's only sales channel in the United States. To remain competitive in the United States market for Accused Products, Plaintiff needs its products listed on the Amazon marketplace.

28.     Amazon has threatened to remove Plaintiff's Accused Products from its online marketplace unless Plaintiff obtains a court order granting it permission to keep selling; potentially preventing Plaintiff from accessing its largest channel of trade because of Defendants' infringement complaint.

29.     Thus, Defendants' submission of an infringement complaint to Amazon has caused and continues to cause immediate and irreparable harm to Plaintiff.

**B.     U.S. Patent No. 12,208,051**

30.     The face of the '051 Patent lists HYPERICE IP SUBCO, LLC as the applicant and assignee. *See* **Exhibit A**, the '051 Patent, cover page.

31.     The '051 Patent is entitled "Massage Device with a Releasable Connection for a Massaging Head" and claims a certain percussive massager.

32.     The '051 Patent generally discloses a percussive massager having a housing, a piston, a motor, a bearing, a so-called drive mechanism (which is never defined), and a so-called quick-connect system which allows a user to switch massage heads "without turning off the massaging device…." '051 Patent, col. 6, ll. 55-56.

33.     This percussive massager disclosed by the '051 Patent is shown below in annotated image below taken from FIG. 1 of such patent:



FIG. 1

34.     The underlying application for what is now the '051 Patent was filed on July 1, 2024 and was issued on January 28, 2025. The '051 Patent also claims priority to several other applications – the oldest of which is U.S. Provisional Patent Application Serial No. 61/841,693 filed on July 1, 2013.

35.     The '051 Patent has one independent claim and fourteen dependent claims, each claiming a percussive massager.

36.     Claim 1 is the only independent claim of the '051 patent and all other claims depend therefrom. Claim 1 requires, in full:

A percussive massager comprising:

a housing;

a piston having a proximal end and a distal end, the distal end of the piston having a bore;

a motor operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed along a longitudinal axis;

a bearing that assists in constraining the piston to reciprocate along the longitudinal axis;

a drive mechanism that determines a predetermined stroke length of the piston; and

a quick-connect system comprising the distal end of the piston and a first massaging head, wherein the quick-connect system allows a proximal end of the first massaging head to be

inserted into or removed from the bore while the piston reciprocates the predetermined stroke length at the first speed.

37.    Accordingly, all claims of the '051 Patent share these claim limitations.

38.    However, such electric percussive massagers were known prior to the filing date of the '051 Patent as demonstrated by voluminous prior art.

39.    As a first, non-exhaustive example of a relevant prior art, electric massagers have been well-known in the prior art for over 100 years; dating back at least as early as 1920 when U.S. Patent No. 1,339,179 to Elmen ("Elmen") covering a percussive massager with an electric motor was patented as shown in the image below (taken from FIG. 2 of such patent):



40.    A copy of Elmen is attached hereto as **Exhibit C**.

41.    In the 100+ years since then, electric percussive massagers have become widespread in the prior art.

42.    As another, non-exhaustive example of relevant prior art, U.S. Patent Publication No. 2007/0150004 filed on December 5, 2006 by Colloca et al. ("Colloca") discloses an electric percussive massager having a piston and a number of interchangeable, quick-connecting massage heads as shown in the images below (taken from FIGS. 1-2 of such patent):

DECLARATORY JUDGMENT COMPLAINT



Fig. 1                    Fig. 2

43.    A copy of Colloca is attached hereto as **Exhibit D**.

44.    As another, non-exhaustive example of relevant prior art, KR101123926B1 by Min ("Min") discloses an electric percussive massager with an electric motor as shown in the images below taken from such patent:



45.    A copy of Min is attached hereto as **Exhibit E**.

46.    The Accused Products also fail to practice every limitation of the '051 Patent (either literally or under the doctrine of equivalents).

<u>**COUNT I**</u>

<u>**DECLARATORY JUDGMENT OF INVALIDITY OF THE '051 PATENT**</u>

47.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.    As a result of Defendants' acts described herein, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment

9

1    that Plaintiff has not infringed any valid claim of the '051 Patent.

2        49.    An actual, continuing, and justiciable controversy exists between Plaintiff
3    and Defendants concerning the validity of the '051 Patent, as evidenced by Defendants'
4    allegations of infringement on Amazon, as set forth above.

5        50.    All the Claims of the '051 Patent are invalid under 35 U.S.C. § 102, 103,
6    and/or § 112 at least in light of the prior art (alone or in combination with the knowledge
7    of a person of ordinary skill in the art).

8        51.    Plaintiff is entitled to a declaratory judgment that the '051 Patent is
9    invalid.

10       52.    Plaintiff is further entitled to, among other relief, preliminary and
11   permanent injunctive relief enjoining Defendants from alleging, representing, or
12   otherwise stating that Plaintiff's sale of the Accused Products infringes any valid and
13   enforceable claim of the '051 Patent.

14       53.    A judicial declaration is necessary and appropriate so that Plaintiff may
15   ascertain its legal rights with respect to continued sale of the Accused Products.

## COUNT II

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '051 PATENT

19       54.    Plaintiff reiterates and incorporates by reference the allegations set forth
20   in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

21       55.    As a result of Defendants' acts described herein, there exists a controversy
22   of sufficient immediacy and reality to warrant the issuance of a declaratory judgment
23   that Plaintiff has not infringed any valid claim of the '051 Patent.

24       56.    A judicial declaration is necessary and appropriate so that Plaintiff may
25   ascertain its legal rights with respect to continued sale of the Accused Products.

26       57.    Plaintiff is entitled to a declaratory judgment that its sale of the Accused
27   Products does not constitute patent infringement (including, without limitation,
28   contributory patent infringement and/or induced patent infringement).

58.    Plaintiff is further entitled to, among other relief, preliminary and permanent injunctive relief enjoining Defendants from alleging, representing, or otherwise stating that Plaintiff's sale of the Accused Products infringes any valid and enforceable claim of the '051 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.    Entering judgment against Defendants and in favor of Plaintiff on all counts in this Complaint;

B.    Declaring that the claims of the '051 Patent are invalid for failing to satisfy the criteria of 35 U.S.C. §§ 102, 103, and/or 112;

C.    Declaring that Plaintiff's Accused Products do not infringe any valid and enforceable claim of the '051 Patent; either directly or indirectly;

D.    Granting an injunction preliminarily and permanently restraining and enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

(1)    sending further communications to Amazon (or any other third party) accusing Plaintiff of infringing the '051 Patent;

(2)    making or displaying any statement, representation, or depiction that Plaintiff has infringed or is infringing the '051 Patent;

E.    Granting a mandatory injunction requiring Defendants to retract any statements previously issued to Plaintiff's sales partners and/or customers (including, without limitation, Amazon) regarding alleged infringement of the '051 Patent;

F.    Entering a finding that this case is exceptional and award Plaintiff their costs, expenses, and reasonable attorney fees incurred in this action pursuant to 35 U.S.C. § 285;

G.    Awarding pre- and post- judgment interest; and

11
DECLARATORY JUDGMENT COMPLAINT

1    H.    Awarding Plaintiff such other and further relief as this Court deems is just

2  and proper.

3                              **JURY TRIAL DEMAND**

4    Plaintiff hereby demands a jury trial on all issues so triable.

5

6  Dated:  April 1, 2025                    Respectfully submitted,

7                                            DINSMORE & SHOHL LLP

8

9                                            By:  /s/ Arielle I. Goren

10                                                Arielle I. Goren
                                             Attorneys for Plaintiff Foshan Huiya Ziyi E-
11                                           commerce Co., Ltd.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATORY JUDGMENT COMPLAINT

# Exhibit A

US012208051B1

(12) **United States Patent**
Danby et al.

(10) Patent No.: **US 12,208,051 B1**
(45) Date of Patent: **\*Jan. 28, 2025**

(54) **MASSAGE DEVICE WITH A RELEASABLE CONNECTION FOR A MASSAGING HEAD**

(71) Applicant: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

(72) Inventors: **Philip C. Danby**, Key Biscayne, FL (US); **John Charles Danby**, Witham (GB)

(73) Assignee: **HYPERICE IP SUBCO, LLC**, Irvine, CA (US)

( \* ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **18/760,568**

(22) Filed: **Jul. 1, 2024**

**Related U.S. Application Data**

(63) Continuation of application No. 18/466,702, filed on Sep. 13, 2023, which is a continuation of application
(Continued)

(51) **Int. Cl.**
**A61H 23/02** (2006.01)

(52) **U.S. Cl.**
CPC . **A61H 23/0254** (2013.01); *A61H 2201/0107* (2013.01); *A61H 2201/0153* (2013.01); *A61H 2201/0157* (2013.01); *A61H 2201/1215* (2013.01); *A61H 2201/1418* (2013.01); *A61H 2201/149* (2013.01); *A61H 2201/1664* (2013.01); *A61H 2201/5005* (2013.01); *A61H 2201/501* (2013.01); *A61H 2201/5015* (2013.01); *A61H 2201/5035* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ A61H 23/0254; A61H 2201/0107; A61H 2201/0153; A61H 2201/0157; A61H 2201/1215; A61H 2201/1418; A61H 2201/149; A61H 2201/1664; A61H 2201/5005; A61H 2201/5035; A61H 2201/5038
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 784,024 A | 3/1905 | Barrett et al. |
| 799,881 A | 9/1905 | Wells |
| (Continued) | | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CA | 188544 A | 2/1919 | |
| CA | 188545 A | 2/1919 | |
| (Continued) | | | |

OTHER PUBLICATIONS

U.S. Appl. No. 17/083,118 Published as: US2021/0038472, System and Process for Determining Pressure Settings for a Percussive Massage Applicator, filed Oct. 28, 2020.
(Continued)

*Primary Examiner* — Timothy A Stanis
(74) *Attorney, Agent, or Firm* — Goodwin Procter LLP

(57) **ABSTRACT**
Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis, a massaging head connected to the piston, a motor located on a first side of the longitudinal axis and a handle located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

**15 Claims, 7 Drawing Sheets**



## US 12,208,051 B1

Page 2

### Related U.S. Application Data

No. 17/681,367, filed on Feb. 25, 2022, now Pat. No.
11,857,482, which is a continuation of application
No. 15/892,665, filed on Feb. 9, 2018, now Pat. No.
11,285,075, which is a continuation of application
No. 14/317,573, filed on Jun. 27, 2014, now Pat. No.
9,889,066.

(60)  Provisional application No. 61/841,693, filed on Jul.
1, 2013.

(52)  **U.S. Cl.**
CPC ................  *A61H 2201/5038* (2013.01); *A61H
2201/5097* (2013.01)

(56)                **References Cited**

              U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 863,525 | A | 12/1907 | Gardy |
| 873,123 | A | 12/1907 | Gardy |
| 1,269,803 | A | 6/1918 | Elmen et al. |
| 1,339,179 | A | 5/1920 | Elmen |
| 1,594,636 | A | 8/1926 | Smith |
| 1,612,981 | A | 1/1927 | Mraula |
| 1,657,765 | A | 1/1928 | Pasque |
| 1,784,301 | A | 12/1930 | Mekler |
| 1,978,223 | A | 10/1934 | Parker |
| 2,078,025 | A | 4/1937 | Samuels |
| 3,030,647 | A | 4/1962 | Peyron |
| D197,889 | S | 4/1964 | Hass |
| 3,494,353 | A | 2/1970 | Marich |
| 3,626,934 | A | 12/1971 | Andis |
| 3,696,693 | A | 10/1972 | Bosten et al. |
| 3,699,952 | A | 10/1972 | Waters et al. |
| 3,705,578 | A | 12/1972 | Cutler et al. |
| 3,710,785 | A | 1/1973 | Hilger |
| 3,837,335 | A | 9/1974 | Teranishi |
| 3,841,321 | A | 10/1974 | Albach et al. |
| 3,845,758 | A | 11/1974 | Anderson |
| 3,920,291 | A | 11/1975 | Wendel et al. |
| 3,968,789 | A | 7/1976 | Simoncini |
| 3,993,021 | A | 11/1976 | Miyahara |
| 4,079,733 | A | 3/1978 | Denton et al. |
| 4,088,128 | A | 5/1978 | Mabuchi |
| 4,149,530 | A | 4/1979 | Gow |
| 4,150,668 | A | 4/1979 | Johnston |
| 4,162,675 | A | 7/1979 | Kawada |
| 4,173,217 | A | 11/1979 | Johnston |
| RE30,500 | E | 2/1981 | Springer et al. |
| 4,412,535 | A | 11/1983 | Teren |
| 4,505,267 | A | 3/1985 | Inada |
| 4,513,737 | A | 4/1985 | Mabuchi |
| 4,523,580 | A | 6/1985 | Tureaud |
| 4,549,535 | A | 10/1985 | Wing |
| 4,566,442 | A | 1/1986 | Mabuchi et al. |
| 4,691,693 | A | 9/1987 | Sato |
| 4,698,869 | A | 10/1987 | Mierau et al. |
| 4,709,201 | A | 11/1987 | Schaefer et al. |
| 4,726,430 | A | 2/1988 | Hendrikx et al. |
| 4,730,605 | A | 3/1988 | Noble et al. |
| 4,751,452 | A | 6/1988 | Kilmer et al. |
| 4,790,296 | A | 12/1988 | Segal |
| 4,827,914 | A | 5/1989 | Kamazawa |
| 4,841,955 | A | 6/1989 | Evans et al. |
| 4,858,600 | A | 8/1989 | Gross et al. |
| 4,880,713 | A | 11/1989 | Levine |
| 4,989,613 | A | 2/1991 | Finkenberg |
| 5,043,651 | A | 8/1991 | Tamura |
| 5,063,911 | A | 11/1991 | Teranishi |
| 5,065,743 | A | 11/1991 | Sutherland |
| D323,034 | S | 1/1992 | Reinstein |
| D323,606 | S | 2/1992 | Chang |
| 5,085,207 | A | 2/1992 | Fiore |
| 5,134,777 | A | 8/1992 | Meyer et al. |
| 5,140,979 | A | 8/1992 | Nakagawa |
| D329,291 | S | 9/1992 | Wollman |
| D329,292 | S | 9/1992 | Wollman |
| 5,159,922 | A | 11/1992 | Mabuchi et al. |
| D331,467 | S | 12/1992 | Wollman |
| D335,073 | S | 4/1993 | Anthony et al. |
| 5,215,051 | A | 6/1993 | Smith |
| 5,215,078 | A | 6/1993 | Fulop |
| 5,305,738 | A | 4/1994 | Shimizu |
| 5,311,860 | A | 5/1994 | Doria |
| 5,364,223 | A | 11/1994 | Bissex |
| 5,415,621 | A | 5/1995 | Campbell |
| 5,417,644 | A | 5/1995 | Lee |
| 5,447,491 | A | 9/1995 | Bellandi et al. |
| 5,469,860 | A | 11/1995 | De Santis |
| 5,489,280 | A | 2/1996 | Russell |
| D367,712 | S | 3/1996 | Young |
| D373,640 | S | 9/1996 | Young |
| 5,569,168 | A | 10/1996 | Hartwig |
| 5,573,500 | A | 11/1996 | Katsunuma et al. |
| D377,100 | S | 12/1996 | Gladieux, Jr. |
| 5,602,432 | A | 2/1997 | Mizutani |
| D378,338 | S | 3/1997 | Acciville et al. |
| 5,632,720 | A | 5/1997 | Kleitz |
| D379,580 | S | 6/1997 | Amundsen |
| 5,656,017 | A | 8/1997 | Keller et al. |
| 5,656,018 | A | 8/1997 | Tseng |
| D388,175 | S | 12/1997 | Lie |
| 5,725,483 | A | 3/1998 | Podolsky |
| 5,733,029 | A | 3/1998 | Monroe |
| 5,769,657 | A | 6/1998 | Kondo et al. |
| 5,797,462 | A | 8/1998 | Rahm |
| 5,803,916 | A | 9/1998 | Kuznets et al. |
| D403,220 | S | 12/1998 | Kimata et al. |
| 5,843,006 | A | 12/1998 | Phillips et al. |
| D407,498 | S | 3/1999 | Cooper |
| D408,241 | S | 4/1999 | Jansson |
| 5,925,002 | A | 7/1999 | Wollman |
| 5,935,089 | A | 8/1999 | Shimizu |
| 5,951,501 | A | 9/1999 | Griner |
| 6,051,957 | A | 4/2000 | Klein |
| 6,102,875 | A | 8/2000 | Jones |
| D430,938 | S | 9/2000 | Lee |
| 6,123,657 | A | 9/2000 | Ishikawa et al. |
| 6,165,145 | A | 12/2000 | Noble |
| 6,170,108 | B1 | 1/2001 | Knight |
| D437,713 | S | 2/2001 | Young |
| D438,309 | S | 2/2001 | Young |
| 6,228,042 | B1 | 5/2001 | Dungan |
| 6,231,497 | B1 | 5/2001 | Souder |
| D448,852 | S | 10/2001 | Engelen |
| 6,357,125 | B1 | 3/2002 | Feldmann et al. |
| D455,837 | S | 4/2002 | Kim |
| 6,375,609 | B1 | 4/2002 | Hastings et al. |
| 6,401,289 | B1 | 6/2002 | Herbert |
| 6,402,710 | B1 | 6/2002 | Hsu |
| D460,675 | S | 7/2002 | Morgan |
| 6,432,072 | B1 | 8/2002 | Harris et al. |
| 6,440,091 | B1 | 8/2002 | Hirosawa |
| 6,461,377 | B1 | 10/2002 | An |
| 6,478,755 | B2 | 11/2002 | Young |
| D467,148 | S | 12/2002 | Flickinger |
| 6,494,849 | B2 | 12/2002 | Kuo |
| 6,503,211 | B2 | 1/2003 | Frye |
| 6,537,236 | B2 | 3/2003 | Tucek et al. |
| D474,089 | S | 5/2003 | Huang |
| 6,577,287 | B2 | 6/2003 | Havel |
| 6,581,596 | B1 | 6/2003 | Truitt et al. |
| D476,746 | S | 7/2003 | Harris et al. |
| 6,585,667 | B1 | 7/2003 | Muller |
| 6,602,211 | B2 | 8/2003 | Tucek |
| 6,616,621 | B1 | 9/2003 | Kohr |
| 6,656,140 | B2 | 12/2003 | Oguma et al. |
| 6,663,657 | B1 | 12/2003 | Miller |
| 6,682,496 | B1 | 1/2004 | Pivaroff |
| D487,219 | S | 3/2004 | Chudy et al. |
| 6,758,826 | B2 | 7/2004 | Luettgen et al. |
| 6,805,700 | B2 | 10/2004 | Miller |
| D498,128 | S | 11/2004 | Sterling |
| 6,832,991 | B1 | 12/2004 | Inada et al. |

## US 12,208,051 B1

Page 3

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,866,776 B2 | 3/2005 | Leason et al. |
| 6,979,300 B1 | 12/2005 | Julian et al. |
| 6,994,679 B1 | 2/2006 | Lee |
| 7,033,329 B2 | 4/2006 | Liao |
| 7,041,072 B2 | 5/2006 | Calvert |
| 7,083,581 B2 | 8/2006 | Tsai |
| 7,125,390 B2 | 10/2006 | Ferber et al. |
| 7,128,722 B2 | 10/2006 | Lev et al. |
| D531,733 S | 11/2006 | Burout, III et al. |
| 7,144,417 B2 | 12/2006 | Colloca et al. |
| 7,169,169 B2 | 1/2007 | Tucek et al. |
| D536,591 S | 2/2007 | Ghode et al. |
| 7,211,057 B2 | 5/2007 | Gleason et al. |
| D544,102 S | 6/2007 | Pivaroff |
| 7,229,424 B2 | 6/2007 | Jones et al. |
| 7,238,162 B2 | 7/2007 | Dehli |
| D548,354 S | 8/2007 | Lai |
| 7,264,598 B2 | 9/2007 | Shin |
| 7,270,641 B2 | 9/2007 | Glucksman et al. |
| D553,252 S | 10/2007 | Masuda |
| 7,282,036 B2 | 10/2007 | Masuda |
| 7,282,037 B2 | 10/2007 | Cho |
| D555,255 S | 11/2007 | Masuda |
| 7,306,569 B2 | 12/2007 | LaJoie et al. |
| 7,322,946 B2 | 1/2008 | Lev et al. |
| 7,335,170 B2 | 2/2008 | Milne et al. |
| 7,354,408 B2 | 4/2008 | Muchisky |
| D581,542 S | 11/2008 | Ferber et al. |
| D581,543 S | 11/2008 | Ferber et al. |
| D582,049 S | 12/2008 | Ferber et al. |
| 7,470,242 B2 | 12/2008 | Ferber et al. |
| 7,503,923 B2 | 3/2009 | Miller |
| 7,507,198 B2 | 3/2009 | Ardizzone et al. |
| 7,517,327 B1 | 4/2009 | Knight |
| 7,597,669 B2 | 10/2009 | Huang |
| D606,192 S | 12/2009 | Summerer et al. |
| 7,629,766 B2 | 12/2009 | Sadow |
| 7,634,314 B2 | 12/2009 | Applebaum et al. |
| 7,658,012 B2 | 2/2010 | James et al. |
| D613,416 S | 4/2010 | Schupman |
| D625,164 S | 10/2010 | Aglassinger |
| D627,897 S | 11/2010 | Yde et al. |
| D627,898 S | 11/2010 | Aulwes et al. |
| 7,927,259 B1 | 4/2011 | Rix |
| 7,927,294 B2 | 4/2011 | Kamimura et al. |
| 7,976,485 B2 | 7/2011 | Huang |
| D649,657 S | 11/2011 | Petersen et al. |
| 8,052,625 B2 | 11/2011 | Tsai et al. |
| 8,083,699 B2 | 12/2011 | Colloca et al. |
| 8,092,407 B2 | 1/2012 | Tsukada et al. |
| D658,759 S | 5/2012 | Marescaux et al. |
| 8,192,379 B2 | 6/2012 | Huang |
| D665,915 S | 8/2012 | Ma |
| 8,282,583 B2 | 10/2012 | Tsai |
| 8,317,733 B2 | 11/2012 | Chen et al. |
| 8,342,187 B2 | 1/2013 | Kalman et al. |
| 8,435,194 B2 | 5/2013 | Dverin et al. |
| 8,475,362 B2 | 7/2013 | Sohn et al. |
| 8,632,525 B2 | 1/2014 | Kerr et al. |
| 8,673,487 B2 | 3/2014 | Churchill |
| D703,337 S | 4/2014 | Fuhr et al. |
| D706,433 S | 6/2014 | Fuhr et al. |
| D708,742 S | 7/2014 | Dallemagne et al. |
| 8,826,547 B2 | 9/2014 | Oberheim |
| 8,841,871 B2 | 9/2014 | Yang et al. |
| D719,273 S | 12/2014 | Chen |
| 8,951,216 B2 | 2/2015 | Yoo et al. |
| D725,790 S | 3/2015 | Givord |
| D725,978 S | 4/2015 | Uematsu et al. |
| 9,017,355 B2 | 4/2015 | Smith et al. |
| D734,863 S | 7/2015 | Hennessey |
| D735,348 S | 7/2015 | Hennessey |
| 9,107,690 B2 | 8/2015 | Bales, Jr. et al. |
| D738,516 S | 9/2015 | Karim |
| 9,272,141 B2 | 3/2016 | Nichols |

| | | | |
|---|---|---|---|
| D752,936 S | 4/2016 | King et al. |
| D757,953 S | 5/2016 | Philips |
| 9,333,371 B2 | 5/2016 | Bean et al. |
| D759,237 S | 6/2016 | Heath et al. |
| D759,238 S | 6/2016 | Heath et al. |
| D759,831 S | 6/2016 | Levi et al. |
| 9,364,626 B2 | 6/2016 | Carter et al. |
| D763,442 S | 8/2016 | Price et al. |
| D778,439 S | 2/2017 | Hakansson et al. |
| 9,756,402 B2 | 9/2017 | Stampfl et al. |
| D810,280 S | 2/2018 | Tharp et al. |
| 9,889,066 B2 | 2/2018 | Danby et al. |
| D819,221 S | 5/2018 | Lei |
| D823,478 S | 7/2018 | Park |
| D825,073 S | 8/2018 | Lenke |
| D827,842 S | 9/2018 | Bainton et al. |
| D827,843 S | 9/2018 | Bainton et al. |
| 10,162,106 B1 | 12/2018 | Grillo et al. |
| D837,395 S | 1/2019 | Gan |
| D838,378 S | 1/2019 | Cao |
| D840,032 S | 2/2019 | Clifford et al. |
| D840,547 S | 2/2019 | Harle et al. |
| 10,201,470 B2 | 2/2019 | Griner |
| D842,491 S | 3/2019 | Fleming et al. |
| D843,002 S | 3/2019 | Yarborough et al. |
| D843,656 S | 3/2019 | Zhang et al. |
| D844,896 S | 4/2019 | Levi et al. |
| D845,499 S | 4/2019 | Wersland et al. |
| D847,362 S | 4/2019 | Tang |
| D847,364 S | 4/2019 | Lee et al. |
| 10,245,033 B2 | 4/2019 | Overmyer et al. |
| D847,990 S | 5/2019 | Kimball |
| D848,089 S | 5/2019 | Cunniff |
| D849,260 S | 5/2019 | Wersland et al. |
| D850,640 S | 6/2019 | Wersland et al. |
| 10,314,762 B1 | 6/2019 | Marton et al. |
| 10,357,425 B2 | 7/2019 | Wersland et al. |
| D855,822 S | 8/2019 | Marton et al. |
| D865,192 S | 10/2019 | Nazarian |
| 10,456,325 B2 | 10/2019 | Fan |
| 10,470,970 B2 | 11/2019 | Nazarian et al. |
| D869,928 S | 12/2019 | Hsiao |
| 10,492,984 B2 | 12/2019 | Marton et al. |
| 10,561,574 B1 | 2/2020 | Marton et al. |
| D879,290 S | 3/2020 | Harman et al. |
| 10,617,588 B2 | 4/2020 | Wersland et al. |
| D890,353 S | 7/2020 | Nazarian |
| 10,890,942 S | 7/2020 | Wersland et al. |
| 10,890,943 S | 7/2020 | Wersland et al. |
| 10,702,448 B2 | 7/2020 | Wersland et al. |
| 10,743,650 B2 | 8/2020 | Katano et al. |
| D896,393 S | 9/2020 | Wersland et al. |
| 10,774,860 B2 | 9/2020 | Wersland et al. |
| D903,140 S | 11/2020 | Andrejs |
| 10,847,984 B2 | 11/2020 | Solana et al. |
| 10,857,064 B2 | 12/2020 | Wersland et al. |
| D907,792 S | 1/2021 | Marton et al. |
| D908,235 S | 1/2021 | Marton et al. |
| 10,888,492 B2 | 1/2021 | Marton et al. |
| D910,870 S | 2/2021 | Marton et al. |
| 10,905,627 B2 | 2/2021 | Marton et al. |
| 10,912,708 B2 | 2/2021 | Marton et al. |
| D918,404 S | 5/2021 | Wersland et al. |
| 10,993,874 B1 | 5/2021 | Marton et al. |
| D928,334 S | 8/2021 | Chou |
| D932,036 S | 9/2021 | Nazarian |
| 11,166,863 B2 | 11/2021 | Wersland et al. |
| D946,166 S | 3/2022 | Li |
| D949,365 S | 4/2022 | Li |
| D949,416 S | 4/2022 | Khubani et al. |
| D949,417 S | 4/2022 | Khubani et al. |
| D949,418 S | 4/2022 | Khubani et al. |
| D952,878 S | 5/2022 | Lin |
| D970,743 S | 11/2022 | Brailey |
| 2002/0058892 A1 | 5/2002 | Young |
| 2002/0161315 A1 | 10/2002 | Harris et al. |
| 2002/0177795 A1 | 11/2002 | Frye |
| 2002/0188233 A1 | 12/2002 | Denyes |
| 2003/0009116 A1 | 1/2003 | Luettgen et al. |

16

**US 12,208,051 B1**

Page 4

(56)                **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2003/0014079 A1 | 1/2003 | Tucek |
| 2003/0028134 A1 | 2/2003 | Lev et al. |
| 2003/0060741 A1 | 3/2003 | Park |
| 2003/0114781 A1 | 6/2003 | Beaty et al. |
| 2003/0130602 A1 | 7/2003 | Chang |
| 2003/0144615 A1 | 7/2003 | Lin |
| 2003/0195438 A1 | 10/2003 | Petillo |
| 2003/0195443 A1 | 10/2003 | Miller |
| 2003/0218045 A1 | 11/2003 | Shkolnikov |
| 2004/0010268 A1 | 1/2004 | Gabehart |
| 2004/0144553 A1 | 7/2004 | Ashbaugh |
| 2004/0254507 A1 | 12/2004 | Off |
| 2005/0015030 A1 | 1/2005 | Bousfield et al. |
| 2005/0075591 A1 | 4/2005 | Hafemann |
| 2005/0096571 A1 | 5/2005 | Miki |
| 2005/0096682 A1 | 5/2005 | Daffer |
| 2005/0113870 A1 | 5/2005 | Miller |
| 2005/0131461 A1 | 6/2005 | Tucek et al. |
| 2005/0192519 A1 | 9/2005 | Crunick |
| 2005/0203448 A1 | 9/2005 | Harris et al. |
| 2006/0025710 A1 | 2/2006 | Schulz et al. |
| 2006/0058714 A1 | 3/2006 | Rhoades |
| 2006/0074360 A1 | 4/2006 | Yu |
| 2006/0116614 A1 | 6/2006 | Jones et al. |
| 2006/0178040 A1 | 8/2006 | Kurosawa |
| 2006/0178715 A1 | 8/2006 | Ahn et al. |
| 2006/0211961 A1 | 9/2006 | Meyer et al. |
| 2006/0293711 A1 | 12/2006 | Keller et al. |
| 2007/0144310 A1 | 6/2007 | Pozgay et al. |
| 2007/0150004 A1 | 6/2007 | Colloca et al. |
| 2007/0154783 A1 | 7/2007 | Jeon |
| 2007/0179414 A1 | 8/2007 | Imboden et al. |
| 2007/0257638 A1 | 11/2007 | Amend et al. |
| 2008/0196553 A1 | 8/2008 | Hoffmann et al. |
| 2008/0214968 A1 | 9/2008 | Milne et al. |
| 2008/0234611 A1 | 9/2008 | Sakai et al. |
| 2008/0243039 A1 | 10/2008 | Rhoades |
| 2008/0262397 A1 | 10/2008 | Habatjou |
| 2008/0262399 A1 | 10/2008 | Kovelman et al. |
| 2008/0275371 A1 | 11/2008 | Hoffmann |
| 2008/0306417 A1 | 12/2008 | Imboden et al. |
| 2009/0000039 A1 | 1/2009 | St. John et al. |
| 2009/0005812 A1 | 1/2009 | Fuhr |
| 2009/0182249 A1 | 7/2009 | Sakai et al. |
| 2009/0270915 A1 | 10/2009 | Tsai et al. |
| 2009/0286145 A1 | 11/2009 | Wan et al. |
| 2009/0306577 A1 | 12/2009 | Akridge et al. |
| 2010/0116517 A1 | 5/2010 | Katzenberger et al. |
| 2010/0145242 A1 | 6/2010 | Tsai |
| 2010/0160841 A1 | 6/2010 | Wu |
| 2010/0164434 A1 | 7/2010 | Cacioppo et al. |
| 2010/0185127 A1 | 7/2010 | Nilsson et al. |
| 2010/0228168 A1 | 9/2010 | Xu et al. |
| 2010/0252294 A1 | 10/2010 | Kondo et al. |
| 2010/0274162 A1 | 10/2010 | Evans |
| 2010/0331745 A1 | 12/2010 | Yao |
| 2011/0017742 A1 | 1/2011 | Sausen et al. |
| 2011/0087141 A1 | 4/2011 | Wagy et al. |
| 2011/0106067 A1 | 5/2011 | Geva et al. |
| 2011/0169481 A1 | 7/2011 | Nguyen et al. |
| 2012/0038483 A1 | 2/2012 | Du et al. |
| 2012/0120573 A1 | 5/2012 | Bentley |
| 2012/0197357 A1 | 8/2012 | Dewey et al. |
| 2012/0215141 A1 | 8/2012 | Peddicord |
| 2012/0253245 A1 | 10/2012 | Stanbridge |
| 2012/0259525 A1 | 10/2012 | Tomlinson et al. |
| 2012/0281392 A1 | 11/2012 | Workman et al. |
| 2012/0296244 A1 | 11/2012 | Ceoldo et al. |
| 2013/0006040 A1 | 1/2013 | Lee |
| 2013/0030506 A1 | 1/2013 | Bartolone et al. |
| 2013/0076271 A1 | 3/2013 | Suda et al. |
| 2013/0102937 A1 | 4/2013 | Ehrenreich et al. |
| 2013/0112451 A1 | 5/2013 | Kondo et al. |
| 2013/0138023 A1 | 5/2013 | Lerro |
| 2013/0261516 A1 | 10/2013 | Cilea et al. |
| 2013/0281897 A1 | 10/2013 | Hoffmann et al. |
| 2013/0289457 A1 | 10/2013 | Young et al. |
| 2013/0294019 A1 | 11/2013 | LaSota et al. |
| 2014/0014384 A1 | 1/2014 | Horie et al. |
| 2014/0031866 A1 | 1/2014 | Fuhr et al. |
| 2014/0094724 A1 | 4/2014 | Freeman |
| 2014/0159507 A1 | 6/2014 | Johnson et al. |
| 2014/0221887 A1 | 8/2014 | Wu |
| 2014/0288473 A1 | 9/2014 | Matsushita |
| 2015/0005682 A1 | 1/2015 | Danby et al. |
| 2015/0107383 A1 | 4/2015 | Duesselberg et al. |
| 2015/0119771 A1 | 4/2015 | Roberts |
| 2015/0148592 A1 | 5/2015 | Kanbar et al. |
| 2015/0182415 A1 | 7/2015 | Olkowski et al. |
| 2015/0366746 A1 | 12/2015 | Ashby |
| 2016/0151238 A1 | 6/2016 | Crunick et al. |
| 2016/0256348 A1 | 9/2016 | Giraud et al. |
| 2016/0271009 A1 | 9/2016 | Giraud et al. |
| 2016/0278436 A1 | 9/2016 | Verleur et al. |
| 2016/0354277 A1 | 12/2016 | Fima |
| 2016/0367425 A1 | 12/2016 | Wersland |
| 2017/0012257 A1 | 1/2017 | Wackwitz et al. |
| 2017/0027798 A1 | 2/2017 | Wersland |
| 2017/0028160 A1 | 2/2017 | Oliver |
| 2017/0087379 A1 | 3/2017 | Sedic |
| 2017/0304145 A1 | 10/2017 | Pepe |
| 2017/0333280 A1 | 11/2017 | Black |
| 2018/0008512 A1 | 1/2018 | Goldstein |
| 2018/0154141 A1 | 6/2018 | Ahn |
| 2018/0168913 A1 | 6/2018 | Sedic |
| 2018/0200141 A1 | 7/2018 | Wersland et al. |
| 2018/0263845 A1 | 9/2018 | Wersland et al. |
| 2019/0015294 A1 | 1/2019 | Nazarian et al. |
| 2019/0091096 A1 | 3/2019 | Patel |
| 2019/0125972 A1 | 5/2019 | Srinivasan et al. |
| 2019/0175434 A1 | 6/2019 | Zhang |
| 2019/0198828 A1 | 6/2019 | Zanon et al. |
| 2019/0209424 A1 | 7/2019 | Wersland et al. |
| 2019/0232403 A1 | 8/2019 | Candelaria |
| 2019/0254921 A1 | 8/2019 | Marton et al. |
| 2019/0254922 A1 | 8/2019 | Marton et al. |
| 2019/0350793 A1 | 11/2019 | Wersland et al. |
| 2020/0069510 A1 | 3/2020 | Wersland et al. |
| 2020/0093945 A1 | 3/2020 | Jeong |
| 2020/0128935 A1 | 4/2020 | Turner |
| 2020/0222263 A1 | 7/2020 | Wersland et al. |
| 2020/0261306 A1 | 8/2020 | Pepe |
| 2020/0261307 A1 | 8/2020 | Wersland et al. |
| 2020/0261310 A1 | 8/2020 | Wersland et al. |
| 2020/0274162 A1 | 8/2020 | Galceran Mestres et al. |
| 2020/0276079 A1 | 9/2020 | Cheng |
| 2020/0289365 A1 | 9/2020 | Katano et al. |
| 2020/0329858 A1 | 10/2020 | Katano et al. |
| 2020/0330321 A1 | 10/2020 | Wersland et al. |
| 2020/0352820 A1 | 11/2020 | Nazarian et al. |
| 2020/0352821 A1 | 11/2020 | Wersland et al. |
| 2020/0405574 A1 | 12/2020 | Wersland et al. |
| 2021/0022955 A1 | 1/2021 | Wersland et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 188553 A | 2/1919 |
| CA | 1042745 A | 11/1978 |
| CA | 2440783 A1 | 3/2004 |
| CN | 2049126 U | 12/1989 |
| CN | 2144503 Y | 10/1993 |
| CN | 2207816 Y | 9/1995 |
| CN | 1149446 A | 5/1997 |
| CN | 1228299 A | 9/1999 |
| CN | 2412567 Y | 1/2001 |
| CN | 2540948 Y | 3/2003 |
| CN | 2694966 Y | 4/2005 |
| CN | 201478387 U | 5/2010 |
| CN | 101801326 A | 8/2010 |
| CN | 202459196 U | 10/2012 |
| CN | 202478137 U | 10/2012 |
| CN | 202536467 U | 11/2012 |
| CN | 101958410 B | 1/2013 |
| CN | 103248096 A | 8/2013 |

## US 12,208,051 B1
Page 5

(56)             **References Cited**

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CN | 203195947 U | 9/2013 |
| CN | 103398298 A | 11/2013 |
| CN | 203395603 U | 1/2014 |
| CN | 103655142 A | 3/2014 |
| CN | 204208018 U | 3/2015 |
| CN | 204246459 U | 4/2015 |
| CN | 204814773 U | 12/2015 |
| CN | 205017429 U | 2/2016 |
| CN | 205251993 U | 5/2016 |
| CN | 205268525 U | 6/2016 |
| CN | 205458346 U | 8/2016 |
| CN | 106491005 A | 3/2017 |
| CN | 206183628 U | 5/2017 |
| CN | 106806103 A | 6/2017 |
| CN | 206333979 U | 7/2017 |
| CN | 206381369 U | 8/2017 |
| CN | 206381373 U | 8/2017 |
| CN | 206381389 U | 8/2017 |
| CN | 107157741 A | 9/2017 |
| CN | 206675699 U | 11/2017 |
| CN | 304486625 | 2/2018 |
| CN | 208130157 U | 11/2018 |
| CN | 210301676 U | 4/2020 |
| CN | 210872953 U | 6/2020 |
| CN | 111759711 A | 10/2020 |
| CN | 112451345 A | 3/2021 |
| DE | 102012212256 A1 | 1/2014 |
| DE | 202013012621 U1 | 12/2017 |
| EM | 004377638-0002 | 10/2017 |
| EP | 0040053 A1 | 11/1981 |
| EP | 0158870 A1 | 10/1985 |
| EP | 0666071 A1 | 8/1995 |
| EP | 0572506 B1 | 1/1997 |
| EP | 1728494 A1 | 12/2006 |
| EP | 1620233 B1 | 2/2007 |
| EP | 2510891 B1 | 6/2016 |
| EP | 3062383 A2 | 8/2016 |
| EP | 3235484 A1 | 10/2017 |
| EP | 3320888 A1 | 5/2018 |
| EP | 3435381 A1 | 1/2019 |
| FI | 903376 A | 12/1991 |
| GB | 191209026 A | 3/1913 |
| GB | 191509508 A | 6/1916 |
| GB | 188946 A | 11/1922 |
| GB | 213117 A | 3/1924 |
| GB | 1293876 A | 10/1972 |
| JP | S54110058 A | 8/1979 |
| JP | S6389158 A | 4/1988 |
| JP | H04250161 A | 9/1992 |
| JP | H053903 A | 1/1993 |
| JP | H0751393 A | 2/1995 |
| JP | H0733329 B2 | 6/1995 |
| JP | H07153440 A | 6/1995 |
| JP | H0866448 A | 3/1996 |
| JP | H08131500 A | 5/1996 |
| JP | H0992246 A | 4/1997 |
| JP | 2781408 B2 | 7/1998 |
| JP | 2999872 B2 | 1/2000 |
| JP | 2002218780 A | 8/2002 |
| JP | 2003230613 A | 8/2003 |
| JP | 2004024523 A | 1/2004 |
| JP | 2004141568 A | 5/2004 |
| JP | 3813828 B2 | 8/2006 |
| JP | 2007044319 A | 2/2007 |
| JP | 2009291451 A | 12/2009 |
| JP | 2010075288 A | 4/2010 |
| JP | 5859905 B2 | 2/2016 |
| JP | 1683409 S | 4/2021 |
| KR | 2000004488 A | 7/2000 |
| KR | 20030008342 A | 1/2003 |
| KR | 200311328 Y1 | 5/2003 |
| KR | 20060074625 A | 7/2006 |
| KR | 200429771 Y1 | 8/2006 |
| KR | 100785097 B1 | 12/2007 |
| KR | 20090128807 A | 12/2009 |

| | | | |
|---|---|---|---|
| KR | 2010-0023508 A | 3/2010 |
| KR | 101007827 B1 | 1/2011 |
| KR | 101162978 B1 | 7/2012 |
| KR | 101315314 B1 | 10/2013 |
| KR | 101504885 B1 | 3/2015 |
| KR | 101649522 B1 | 8/2016 |
| KR | 3010427980000 | 1/2020 |
| KR | 102078829 B1 | 2/2020 |
| RU | 2053754 C1 | 2/1996 |
| RU | 2464005 C1 | 10/2012 |
| TW | M272528 U | 8/2005 |
| TW | M379178 U | 4/2010 |
| TW | M402573 U | 4/2011 |
| TW | M433702 U | 7/2012 |
| TW | M493379 U | 1/2015 |
| TW | M543692 U | 6/2017 |
| TW | D202371 S | 1/2020 |
| TW | 202017550 A | 5/2020 |
| TW | M599159 U | 8/2020 |
| WO | WO-9214435 A1 | 9/1992 |
| WO | WO-9625908 A1 | 8/1996 |
| WO | WO-03006102 A2 | 1/2003 |
| WO | WO-2008/113139 A1 | 9/2008 |
| WO | WO-2009/014727 A1 | 1/2009 |
| WO | WO-2011122812 A2 | 10/2011 |
| WO | WO-2011/159906 A2 | 12/2011 |
| WO | WO-2012/134469 A1 | 10/2012 |
| WO | WO-2012/177028 A2 | 12/2012 |
| WO | WO-2013/141359 A1 | 9/2013 |
| WO | WO-2014/038359 A1 | 3/2014 |
| WO | WO-2014118596 A1 | 8/2014 |
| WO | WO-2015038005 A2 | 3/2015 |
| WO | WO-2017/123841 A2 | 7/2017 |
| WO | WO-2017/184505 A2 | 10/2017 |
| WO | WO-2020/101725 A1 | 5/2020 |
| WO | WO-2020/227225 A1 | 11/2020 |
| WO | WO-2020/227230 A1 | 11/2020 |
| WO | WO-2020/227569 A1 | 11/2020 |

OTHER PUBLICATIONS

U.S. Appl. No. 18/466,702 Published as: 2024/0000656, Massage Device Having Variable Stroke Length, filed Sep. 13, 2023.
U.S. Appl. No. 18/515,119, Massage Device Having Variable Stroke Length, filed Nov. 20, 2023.
U.S. Appl. No. 18/515,122, Massage Device Having a Predetermined Stroke Length, filed Nov. 20, 2023.
U.S. Appl. No. 18/515,126, Massage Device With a Releasable Connection for a Massaging Head, filed Nov. 20, 2023.
U.S. Appl. No. 18/760,576, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.
U.S. Appl. No. 18/760,773, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.
U.S. Appl. No. 18/760,994, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.
U.S. Appl. No. 18/761,049, Massage Device With a Releasable Connection for a Massaging Head, filed Jul. 1, 2024.
U.S. Appl. No. 17/972,421 Published as: 2023/0042943, Percussive Massage Device With Selectable Stroke Length, filed Oct. 24, 2022.
U.S. Appl. No. 17/136,218 Published as: US2021/0361524, Battery-Powered Percussive Massage Device, filed Dec. 29, 2020.
U.S. Appl. No. 18/342,158, Percussive Massage Device With Self-Lubricating Cylinder, filed Jun. 27, 2023.
U.S. Appl. No. 18/452,274, Motor and Piston Assembly for Percussive Massage Device, filed Aug. 18, 2023.
U.S. Appl. No. 17/402,201 Published as: US2023/0048861, Combination Applicator and Adaptor for Percussive Massage Device, filed Aug. 13, 2021.
Amazon, "Theragun G3PRO Percussive Therapy Device", (Feb. 13, 2019)https://www.amazon.com/G3PRO-Percussive-Professional-Stimulator-Performance/dp/B07MJ2MCT3, 13 pages.
Campbell, D., "Jolt Therapy Tool," https://www.youtube.com/watch?v＝-1nLjD-xRgI, Jul. 28, 2017, 2 pages.
Cavity—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/cavity; retrieved Sep. 23, 2020 (9 pages).

## US 12,208,051 B1

Page 6

(56)          **References Cited**

OTHER PUBLICATIONS

Centech 4 in 1 Portable Power Pack Owner's Manual & Safety Instructions, 2014, 12 pages.
Christiana, A., "Porter-Cable PCL212ICC-2 12V Compact Lithium Two Tool Kit," Dec. 5, 2014, 5 pages.
Curriculum Vitae of Philip J. O'Keefe, PE (10 pages).
Declaration of Philip O'Keefe, P.E., in Support of Petition or Post-Grant Review dated Sep. 30, 2020 (136 pages).
DePuy Synthes Power Tools, "Battery Power Line II, User's Manual," for Battery-driven power tool system for orthopedics and traumatology, Dec. 2012, 83 pages.
DIY Jigsaw "Drill" Massager—Percussion Massager, Feb. 9, 2018, 19 pages.
http://web.archive.org/web/20100418041422/http://www.instructables.com:80/id/Jigsaw-Massager/ (Year: 2010), 6 pages.
HyperIce PGR (Final Filing Draft); *Shenzhen Shufang Innovation Technology Co., Ltd.; Nenz Electric Technology* (Dongguan) *Co., Ltd.; Shenzhen Xinde Technology Co., Ltd.; Performance Health Systems, LLC; Yongkang Aijiu Industrial & Trade Co., Ltd.* (Petitioner) v. *Hyper Ice, Inc.* (Patent Owner) Petition for Post Grant Review U.S. Pat. No. 10,561,574 dated Sep. 30, 2020 (119 pages—uploaded in two parts p. 1-59 and p. 60-119).
Inner—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/inner; retrieved Aug. 20, 2020 (2 pages).
International Preliminary Report on Patentability and Written Opinion of International Application No. PCT/US2021/057033 dated May 11, 2023, 9 pages.
International Preliminary Report on Patentability of International Application No. PCT/US2021/041073 dated Jan. 10, 2023, 10 pages.
International Preliminary Report on Patentability of corresponding International application PCT/US2018/053352, dated Aug. 27, 2020, 16 pages.
International Search Report and Written Opinion of PCT application No. PCT/US2021/057717, dated Feb. 23, 2022, 7 pages.
International Search Report and Written Opinion of PCT/US2019/013769 dated Aug. 9, 2019, 13 pages.
International Search Report and Written Opinion of PCT/US2021/057033 dated Feb. 16, 2022, 14 pages.
Knopp, B., "How to Change Jolt Attachments," https://www.youtube.com/watch?v=pl-vHxRtXUQ, Apr. 5, 2017, 6 pages.
Longitudinal—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english longitudinal; retrieved Sep. 22, 2020 (8 pages).
Microchip MCP73833/4 Stand-Along Linear Li-Ion / Li-Polymer Charge Management Controller; 2009 Microchip Technology Inc. (32 pages).
NutriKlick Deep Tissue Massage Gun, Date Unknown.
Outer—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/outer; retrieved Sep. 22, 2020 (3 pages).
Perfomax 8 Volt Li-Ion Cordless Driver Owner's Manual, www.manualslib.com, Jul. 27, 2012, 19 pages.
Perimeter—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/perimeter; retrieved Aug. 20, 2020 (1 page).
Practical Electronics for Inventors by Paul Scherz, 2000; (3 pages: cover, copyright page and p. 200).
Rachel [family name unknown], "Jigsaw Massager," Aug. 28, 2007, 8 pages. Information available online from http://www.instructables.com/id/jigsaw-massager/.
Office Action for U.S. Appl. No. 16/107,587, mailed Dec. 26, 2018, 36 pages.
Synthes Battery Power Line, Jun. 2009, 6 pages.
Theragun Owners Manual G2PRO, 16 pages.
Timtam Power Massage 1.5, Aug. 7, 2020, 4 pages.
TOPiando Multifunctional Massage Gun, 19 pages, date unknown.
Within—definition in the Cambridge English Dictionary; https://dictionary.cambridge.org/us/dictionary/english/within; retrieved Aug. 20, 2020 (3 pages).
Feb. 27, 2019 Office Action for U.S. Appl. No. 16/201,542.
Yu-Chung, C., "Electrolux Power Drill," www.design-inspiration.net/inspiration/yu-chung-chang-electrolux-power-drill/, Aug. 20, 2017, 4 pages.



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5A

FIG. 5B

FIG. 6

FIG. 6A

FIG. 6B



**FIG. 7**



FIG. 8

US 12,208,051 B1

**1**

## MASSAGE DEVICE WITH A RELEASABLE CONNECTION FOR A MASSAGING HEAD

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 18/466,702 filed on Sep. 13, 2023, which is a continuation of U.S. patent application Ser. No. 17/681,367 filed on Feb. 25, 2022, which is a continuation of U.S. patent application Ser. No. 15/892,665 filed on Feb. 9, 2018, and entitled "MASSAGE DEVICE HAVING VARIABLE STROKE LENGTH", (now U.S. Pat. No. 11,285,075 issued on Mar. 29, 2022), which is a continuation of U.S. patent application Ser. No. 14/317,573 filed on Jun. 27, 2014, and entitled "MASSAGING DEVICE HAVING A HEAT SINK" (now U.S. Pat. No. 9,889,066 issued on Feb. 13, 2018), which claims priority to and the benefits of U.S. Provisional Patent Application No. 61/841,693 filed on Jul. 1, 2013, and entitled "MASSAGING DEVICE", the entireties of which are incorporated herein by reference.

### BACKGROUND

This invention relates generally to medical devices, and more particularly, to a deep muscle-stimulating device used to increase muscle metabolism, increase the lactic acid cycle and relieve pain.

Vibrating massaging devices are available on the market today; however, those devices suffer from many deficiencies. Many of the prior art massaging devices are bulky, get very hot, are noisy and/or are difficult to use for extended periods of time.

### SUMMARY

Exemplary embodiments of massaging devices are disclosed herein. One exemplary embodiment includes a piston having a longitudinal axis and a massaging head connected to the piston. A motor is located on a first side of the longitudinal axis and a handle is located on a second side of the longitudinal axis. A drive mechanism for moving the piston and massage head is also included.

Another exemplary embodiment of a massaging device includes a handle, a piston, a massaging head attached to the piston, a motor, a drive mechanism for converting rotary motion of the motor to linear motion to drive the piston back and forth in a reciprocating motion, a processor, memory, a data connection in circuit communication with the processor and logic for transmitting data between the massaging device and a remote device.

Still another exemplary embodiment includes a massaging device that has a handle, a motor, a drive mechanism for converting rotary motion of the motor to reciprocating motion, a piston movable in a linear reciprocating motion connected to the drive mechanism and a massage head attached to the piston. The exemplary embodiment also includes a heat sink in thermal communication with the motor and drive mechanism, and a housing having two cavities. The first cavity at least partially surrounds the motor and the second cavity at least partially surrounds the heat sink. The cavities are separated from one another and the second cavity includes one or more openings for allowing air to flow over the heat sink to dissipate heat from the massager.

Another exemplary massaging device includes a housing, a handle extending outward from the housing and a piston

**2**

having a longitudinal axis extending substantially perpendicular to the handle. A massaging head is connected to the piston. In addition, the massaging device includes a motor, a drive mechanism for moving the piston and a control panel. The control panel is located on the housing above the handle.

In yet another exemplary embodiment, a massaging device includes a handle, a piston, a quick-connection mechanism and one or more massaging heads releasably connectable to the piston by the quick-connection mechanism. The massaging device further includes a motor and a drive mechanism for moving the piston.

Another exemplary massaging device includes a handle, a piston, a massaging head connected to the piston, a motor and a drive mechanism for moving the piston. The drive mechanism includes a crank bearing that has one or more spring bars.

Still yet, another exemplary massaging device includes a handle, a piston a massaging head connected to the piston, a drive mechanism for moving the piston in a back and forth motion and a lost motion mechanism located between the massaging head and the drive mechanism.

### BRIEF DESCRIPTION OF THE DRAWINGS

These and other features and advantages of the present invention will become better understood with regard to the following description and accompanying drawings in which:

FIG. **1** illustrates a perspective view of an exemplary embodiment of a massaging device;

FIG. **2** illustrates a first cross-section of the exemplary massaging device of FIG. **1**;

FIG. **3** illustrates a second cross-section of the exemplary massaging device of FIG. **1**;

FIG. **4** illustrates an exploded perspective view of an exemplary drive mechanism of the massaging device;

FIGS. **5**A and **5**B show enlarged side views of a crank bearing having spring bars for use in the exemplary drive mechanism of FIG. **4**;

FIGS. **6**, **6**A and **6**B illustrate an exemplary quick-disconnect mechanism for connecting one or more massaging heads to a massaging device;

FIG. **7** illustrates a schematic view of an exemplary lost motion control mechanism for varying the stroke of the piston driving a massaging head; and

FIG. **8** illustrates an exemplary embodiment of a simplified block circuit diagram for a massaging device.

### DETAILED DESCRIPTION

The Detailed Description merely describes exemplary embodiments of the invention and is not intended to limit the scope of the claims in any way. Indeed, the invention is broader than and unlimited by the exemplary embodiments, and unless specifically indicated otherwise, the terms used in the claims have their full ordinary meaning.

"Circuit communication" as used herein indicates a communicative relationship between devices. Direct electrical, electromagnetic and optical connections and indirect electrical, electromagnetic and optical connections are examples of circuit communication. Two devices are in circuit communication if a signal from one is received by the other, regardless of whether the signal is modified by some other device. For example, two devices separated by one or more of the following—amplifiers, filters, transformers, optoisolators, digital or analog buffers, analog integrators, other electronic circuitry, fiber optic transceivers or satellites—are

US 12,208,051 B1

3

in circuit communication if a signal from one is communicated to the other, even though the signal is modified by the intermediate device(s). As another example, an electromagnetic sensor is in circuit communication with a signal if it receives electromagnetic radiation from the signal. As a final example, two devices not directly connected to each other, but both capable of interfacing with a third device, such as, for example, a processor, are in circuit communication.

Also, as used herein, voltages and values representing digitized voltages are considered to be equivalent for the purposes of this application, and thus the term "voltage" as used herein refers to either a signal, or a value in a processor representing a signal, or a value in a processor determined from a value representing a signal.

"Signal," as used herein includes, but is not limited to one or more electrical signals, analog or digital signals, one or more computer instructions, a bit or bit stream, or the like.

"Logic," synonymous with "circuit" as used herein includes, but is not limited to hardware, firmware, software and/or combinations of each to perform a function(s) or an action(s). For example, based on a desired application or needs, logic may include a software-controlled processor, microprocessor or microcontroller, discrete logic, such as an application specific integrated circuit (ASIC) or other programmed logic device. Logic may also be fully embodied as software. The circuits identified and described herein may have many different configurations to perform the desired functions.

Any values identified in the detailed description are exemplary, and they are determined as needed for a particular massaging device. Accordingly, the inventive concepts disclosed and claimed herein are not limited to particular values or ranges of values used to describe the embodiments disclosed herein.

FIG. 1 is a perspective view of an exemplary embodiment of a hand-held massaging device 100. The exemplary massaging device 100 includes a main housing 102 that houses a motor and a drive unit and an upper housing 104 that includes a heat sink and a fan. In addition, massaging device 100 includes a first handle 106, and a second optional handle 108. Handle 106 has a longitudinal axis that extends away from the housing 102. The massaging device 100 also includes a massaging head 130. As discussed in more detail below, in some embodiments massaging head 130 includes a quick-release connection.

Massaging device 100 includes a control panel 124. In one embodiment, control panel 124 comprises a first momentary pushbutton 126 and a second momentary pushbutton 128. First and second pushbuttons 126, 128 may serve multiple purposes. In one embodiment, pushing the first pushbutton 126 once moves the massaging device 100 to a first preset speed. Pushing the first pushbutton 126 a second time moves the massaging device 100 to a second preset speed. Accordingly, multiple preset speeds may be selected by pushing a single pushbutton. In addition, pushing pushbutton 126 and holding it down may increase the speed of the massaging head until the user releases the pushbutton 126.

In addition, if the massaging device 100 is turned off, pushing second pushbutton 128 once and holding it in for a period of time turns on the massaging device 100. Pushing the second pushbutton 128 in and holding it in for a period of time, such as, for example one second, causes massaging device 100 to turn off. While massaging device 100 is turned on, pushing and releasing second pushbutton 128 decreases the speed of the massaging device 100 to the next lowest preset speed. Pushing and releasing pushbutton 128 again

4

further reduces the speed of the massaging device 100. In some embodiments, the operating speed of the massaging device is generally between about 600 and 3600 strokes per minute.

The control panel 124 is located above handle 106 on upper housing 104. Control panel 124 is located off of the handle 106, which prevents accidental contact between a user's hand and the control panel 124 and allows a user to move her hand to any position on the handle 106 during operation. Preferably, control panel 124 is located so that it is reachable by a user's thumb without the user having to remove her hand from the handle 106. In addition, massaging device 100 includes a power cord 132 for providing power to the massaging device 100.

Although the exemplary control panel 124 illustrates two pushbuttons 126, 128, other controls may be used, such as dials and switches. In addition, visual or audible signals may be generated and displayed on control panel 124. To that extent, control panel 124 may include a visual display (not shown), an audible device (not shown) or the like, such as, for example a speaker, or the like. If a visual or audible device is used, the visual or audible device may be located proximate the pushbuttons or other controls, or may be located apart from such controls.

Upper housing 104 includes an air intake aperture covered by intake grate 120 and one or more air outlet apertures covered by outtake grate(s) 122. As described in more detail below, the heat-generating internal components of massaging device 100 are cooled by air passing through upper housing portion 104.

FIGS. 2 and 3 are cross-sections of massaging device 100. Located within handle 106 is control circuitry 260. Control circuitry 260 is in circuit communication with power cord 132, control panel 124, fan 222 and motor 210.

Motor 210 is located in housing 102 opposite handle 106. Motor 210 is a variable speed DC motor; however, motor 210 may be a constant speed motor, an AC motor or the like. In one embodiment, motor 210 has an operating speed of between about 600 and 3600 revolutions per minute (RPMs).

Motor 210 includes a shaft 211 that extends into a flywheel 212. Flywheel 212 includes a cylindrical projecting member or crank pin 213 positioned offset from the centerline 400 (FIG. 4) of the flywheel 212. Crank pin 213 is inserted in an aperture 410 (FIG. 4) of a crank bearing 214. Crank bearing 214 is inserted into a pocket 232 of a piston 230. The piston also has an elongated cutout 402 to receive part of the flywheel 212 for compactness while permitting piston reciprocation. Crank bearing 214 is cuboid in the exemplary embodiment, however, in some exemplary embodiments, crank bearing 214 may cylindrical.

FIG. 4 is an exploded perspective view of piston 230, flywheel 212 and crank bearing 214. Piston 230 may be made of any suitable material, and in some embodiments, piston 230 is made of aluminum. As illustrated in the drawings, in some embodiments, motor 210 is located on one side of the longitudinal axis of piston 230 and handle 106 is located on a second side of the longitudinal axis. Piston 230 includes a pocket 232 (or transverse slot) having a first wall 232A and a second wall 232B. In some embodiments, piston 230 is hollow on either side of pocket 232 to reduce weight.

Flywheel 212 includes a cylindrical projecting member 213. Crank pin 213 is off set from the centerline 400 of flywheel 212. Accordingly, as flywheel 212 rotates, crank pin 213 rotates in a circular path around the centerline 400 of the flywheel 212. Rotation of crank pin 213 causes crank

US 12,208,051 B1

5

bearing **214** to travel in a circular motion within piston pocket **232** causing reciprocal motion of piston **230**.

Piston **230** is restrained by two spaced apart bearings **310**, **311** (FIG. **3**). Bearing **310** is located on a first side of flywheel **212** and bearing **311** is located on a second side of flywheel **212**. Accordingly, piston **230** may only move in a back-and-forth motion along its longitudinal axis. The arrangement of the bearings **310**, **311** on both ends of the piston **230** provides for a very sturdy and robust drive mechanism. Because piston **230** is constrained to a linear back-and-forth motion, as crank bearing **214** rotates in a circular motion, it acts against side walls **232**A and **232**B of pocket **232**. This mechanism for converting rotary to linear motion is known as a "Scotch yoke."

In order to correctly assemble the components of a Scotch yoke drive, the pocket **232** (or walls of transverse slot) must be milled larger than the outside dimensions of the crank bearing **214**. The gap between the inside of pocket **232** and the outside of crank bearing **214** is typically 0.1 mm inches. Motor **210** rotates at between about 600 and 3600 RPMs and each time the crank bearing **214** switches from moving, for example, toward side wall **232**A of pocket **232** to moving toward the other side wall **232**B, the bearing block **214** travels the small gap and smacks or strikes the side wall, e.g., side **232**B, which causes a significant amount of noise and wear.

In one exemplary embodiment, crank bearing **214** is made with one spring bar **412**. FIG. **5**A is an enlarged elevation view of side **420** of crank bearing **214** and FIG. **5**B is an enlarged plan view showing top **422** of crank bearing **214**. The spring bars **412** are created by milling the outside of the spring block **214** proud by 0.4 mm in the area of the desired spring bar.

As illustrated in FIG. **5**A, the surface of spring bar **412** bows outward. The size of the bow is set to increase the width of the crank bearing **214** to be slightly larger (0.4 mm) than the width of the pocket **232**. In some embodiments, slots **502** and **504** are milled into the surfaces of side **420** and top **422** below the spring bar **412** to allow spring bar **412** to deflect inwards. In some embodiments, slots **502** and **504** intersect thereby leaving spring bar **412** supported only on each end.

Thus, when crank bearing **214** is inserted into pocket **232**, the spring bar **412** contacts the corresponding surface of the pocket **232** and deflects inward which causes crank bearing **214** to fit snuggly in pocket **232**. Accordingly, as crank bearing **214** changes directions from, for example, moving toward side wall **232**A to moving toward side wall **232**B, the spring bar **412** takes up the slack in the gap and prevent noise and wear that would otherwise be generated by the crank bearing **214** striking the side walls **232**A, **232**B of the pocket **232**.

Crank bearing **214** may be made of any suitable material; in some embodiments, crank bearing **214** is made of plastic. Although the exemplary embodiment is shown and described as having one spring bar, exemplary embodiments may have any number of spring bars.

Massaging device **100** includes a drive housing **218**. Drive housing **218** is made of a heat conducting material, such as, for example, aluminum and has a longitudinal bore **327** passing therethrough to receive piston **230**. As shown in FIG. **3**, drive housing **218** includes a first internal cylindrical groove **308** for holding bearing **310** and a second internal cylindrical groove **309** for holding bearing **311**. Spaced bearings **310** and **311** mount and guide the piston **230** relative to the drive housing **218**. Drive housing **318** surrounds piston **230** and flywheel **212**. In some embodiments,

6

drive housing **318** is made up of multiple components, such as an upper drive housing and a lower drive housing.

In addition, motor **210** includes a motor housing **209** that bolts onto drive housing **218**. Motor housing **209** is also made of a heat-conducting material, such as, for example, aluminum. Secured to drive housing **218** is heat sink **220**. Heat sink **220** includes a plurality of fins **221**. Heat sink **220** is made of a heat conducting-material, such as, for example, aluminum.

Main housing **102** contains a first cavity **281**. Upper housing **104** contains a second cavity **282**. First cavity **281** and second cavity **282** are separated by a barrier **280**. Motor housing **209** and drive housing **218** are located in the first cavity **281**. Heat sink **220** is located in second cavity **282**. The exemplary embodiment describes a main housing **102** and upper housing **104**. These may be portions made up of a single structure or multiple structures secured to each other.

Second cavity **282** includes an air inlet aperture **340** which is covered by grate **120** and one or more air outlet apertures **342** covered by one or more grates **122**. A fan **222** is located in second cavity **282**. When the fan **222** is activated, air enters second cavity **282** through air inlet aperture **340** and passes over cooling fins **221** of heat sink **220**, and the air then passes out of second cavity **282** through the one or more outlets **342**. The fan may be activated by a switch (not shown) on control panel **124**, activated automatically when the massaging device **100** is turned on, or may be activated by a thermostat (not shown). Thus, the cooling system for massaging device **100** is located in second cavity **282** and is isolated from the other components in the massaging device **100**.

In typical massaging devices, cooling air is blown over the motor. Because the massaging devices operate for long periods of time in an atmosphere that is subject to a significant amount of dust and lint because the massaging device is often used on a person wearing clothes, a towel or a robe. Over time, the dust and lint may build up on the motor and cause the prior art massaging devices to overheat. Locating the cooling system in a cavity **282** that is isolated from the rest of the internal components minimizes this type of failure. The air outlet grates **122** may be sized larger to allow any lint and dust to freely pass out of the cavity **282**. In addition, the surface of the heat sink **220** is smooth and thus, there will be few pockets for dust and lint to get trapped.

FIGS. **6** and **6**A illustrate an exemplary embodiment of a quick-connect system **600** for connecting a massaging head **620** to a piston **602**. When providing a deep tissue massage using a massaging device, such as, for example, massaging device **100**, it may be desirable to switch massaging heads to work on different muscles or different portions of muscles during the massage. The exemplary quick-connect system **600** allows a user to quickly switch massaging heads **620**. Moreover, the exemplary quick-connect system **600** may be used without turning off the massaging device **100**.

Quick-connect system **600** includes a piston **602** that has a hollow-end bore **608** for receiving the shaft **621** of a massaging head **620**. Located within the bore **608** of piston **602** is a cylindrical seat **604**. Cylindrical seat **604** retains a magnet **606**. Magnet **606** is illustrated with its north pole located flush with the seat and facing toward the opening in bore **608**. Massaging head **620** includes a shaft **621** having a cylindrical pocket **622** at the distal end. Located within the cylindrical pocket **622** is a magnet **624**. Magnet **624** is positioned so that its south pole is located at the distal end of shaft **621**. Accordingly, when the shaft **621** of massaging

US 12,208,051 B1

7

head 620 is slid into opening in bore 608, the magnets 606 and 624 are attracted to one another and magnetically hold massaging head 620 firmly in place.

To remove massaging head 620, a user need only apply a sufficient amount of force to separate the two magnets 606, 624. The strength of the magnets 606, 624 are sized to prevent the massaging head 620 from separating from the piston 602 during normal use, and yet allow a user to quickly remove and replace the massaging head 620. In some embodiments the end 626 of the massaging head 620 is rounded, pointed or tapered (not shown) to allow it to easily slip into the opening 608 even while the piston 608 is moving.

FIG. 6B illustrates another quick-connect massaging head 630. Quick-connect massaging head 630 is substantially the same as massaging head 620 except that the head portion 639 has a different shape than head portion 629 of massaging head 620.

In some embodiments, it may be desirable to adjust the throw or the stroke length of the massaging head to work on larger or smaller muscle groups, or deeper or shallower points of stress or soreness in the muscles. FIG. 7 illustrates an exemplary embodiment of a lost motion system 700. Although lost motion system 700 is a hydraulic lost motion system, other mechanical lost motion devices may be used in accordance with embodiments of the present invention.

Lost motion system 700 is contained in housing 702. Housing 702 may be similar to drive housing 218 described above except it may need to be larger to accommodate lost motion system 700. Housing 702 includes a floating piston 720 located in first cylindrical bore 708. Floating piston 720 includes a sealing member 722 for forming a seal between floating piston 720 and first cylindrical bore 708. A cam 706 secured to housing 702 may be rotated to adjust the amount of travel that floating piston 720 may move. A passage 710 fluidically connects first cylindrical bore 708 to second cylindrical bore 704.

A drive piston 730 is located in second cylindrical bore 704. Drive piston 730 includes a sealing member 732 to seal between the drive piston 730 and second cylindrical bore 704. Drive piston 730 may be driven in substantially the same way as described above with respect to piston 230. A passage 705 fluidically connects second cylindrical bore 704 and passage 710 to third cylindrical bore 706. Located within third cylindrical bore 706 is an output piston 740.

Output piston 740 includes a sealing member 742, such as, for example, an o-ring to form a seal between drive piston 730 and third cylindrical bore 706. Hydraulic fluid 712 is located in passages 705, 710 and portions of the first, second, and third cylindrical cavities 708, 704 and 706 as illustrated. A massaging head (not shown) is connected to output piston 740.

During operation, if cam 706 is set so that floating piston 720 is retained at the proximate end of first cylindrical bore 708 (as illustrated), movement of the drive piston 730 moves output piston 740 its maximum stroke length. If cam 706 is set so that floating piston 720 moves to adjacent the distal end of first cylindrical bore 708, movement of the drive piston 730 moves output piston 740 its minimum stroke length. The cam may also be selectively rotated to intermediate positions to choose different magnitudes of floating piston movement resulting in different selected magnitudes of output piston movement.

In some embodiments, floating piston 720 is physically connected to the cam or other adjustment mechanism so that it is positioned in a predetermined position and remains

8

stationary during operation of the drive piston 730. Thus, floating piston 720 does not float during operation of the massaging device.

In some embodiments, the lost motion system may be contained in the massaging head itself, or in an adaptor that connects between the piston and the massaging head. Thus, rather than having a cam in the housing of the massaging device, different applicator heads or adaptors having a set lost motion, or variable lost motion systems integral therein may be used. In some embodiments, such adaptors and massaging heads may be adapted with a quick-connect system similar to the ones described with respect to FIGS. 6 and 6A.

FIG. 8 illustrates a simplified exemplary electrical schematic diagram 800 of an embodiment of a massaging device. The components disclosed as being on a particular circuit board may be on multiple circuit boards or individually mounted and hardwired to one another. Circuit board 801 includes memory 804, motor control circuitry 810 and fan control circuitry 816, which are in circuit communication with processor 802. Fan control circuitry 816 is in circuit communication with fan 817.

Power circuitry 812 may be included on circuit board 801 or may be located on its own external to the massager. Power circuitry 812 includes the necessary power conditioning circuitry to provide power to both the electronics and the motors. In circuit communication with power circuitry 812 is plug 814. Optionally two or more power circuits may be utilized. All of the connections between power circuitry 812 and the other components may not be shown in FIG. 8; however, those skilled in the art have the required knowledge to provide power to the devices that require power. Motor control circuitry 810 is in circuit communication with drive motor 811. Drive motor 811 is used to drive the piston and massaging head as described above.

Memory 804 is a processor readable media and includes the necessary logic to operate the massaging device. Examples of different processor readable media include Flash Memory, Read-Only Memory (ROM), Random-Access Memory (RAM), programmable read-only memory (PROM), electrically programmable read-only memory (EPROM), electrically erasable programmable read-only memory (EEPROM), magnetic disk, and optically readable mediums, and others. Still further, the processes and logic described herein can be merged into one large process flow or divided into many sub-process flows. The order in which the process flows herein have been described is not critical and can be rearranged while still accomplishing the same results. Indeed, the process flows described herein may be rearranged, consolidated and/or reorganized in their implementation as warranted or desired.

In addition, processor 802 is in circuit communication with control panel 806. Control panel 806 includes any desired pushbuttons, dials, displays or the like. Control panel 806 provides the operator interface to operate and control the massaging device.

Processor 802 is also in circuit communication with data connection 820. Representative data connections 820 include an Ethernet wire, Bluetooth, WiFi, optical transmitter/reader, an IR reader and the like. Combinations of two or more different data connections 820 may be used. Data connection 820 may be used to transmit data to an outside device, such as, for example, a computer or hand-held portable device. Various uses for transmitting such data are described below.

In some embodiments, processor 802 includes logic to collect and store data related to use of the massaging device.

US 12,208,051 B1

9

Exemplary types of data may include usage rates, operating times or the like. In some embodiments, different massaging heads include an RFID chip and when inserted into the massaging device, an RFID reader (not shown) identifies and stores the type of massaging head utilized. In some embodiments, a customer number may be associated with the data. This data may be used to determine lease rates of the massaging device, for calculating cost/benefit analysis, or for setting up customized massages.

In some embodiments, data may be uploaded from a computer or hand-held portable device to the massaging device. Such data may include customized massaging programs tailored for individual needs. In some embodiments, the customized massaging program may be reflective of prior massages given to a customer that were particularly well-received by the customer.

In some embodiments, the customized massaging program may indicate to the user on a display on the control panel **806** massage times, locations, type of massage head to use or the like to ensure covering the desired locations with the customized massage.

While various inventive aspects, concepts and features of the inventions may be described and illustrated herein as embodied in combination in the exemplary embodiments, these various aspects, concepts and features may be used in many alternative embodiments, either individually or in various combinations and sub-combinations thereof. Unless expressly excluded herein all such combinations and sub-combinations are intended to be within the scope of the present inventions. Still further, while various alternative embodiments as to the various aspects, concepts and features of the inventions—such as alternative materials, structures, configurations, methods, circuits, devices and components, software, hardware, control logic, alternatives as to form, fit and function, and so on—may be described herein, such descriptions are not intended to be a complete or exhaustive list of available alternative embodiments, whether presently known or later developed. Those skilled in the art may readily adopt one or more of the inventive aspects, concepts or features into additional embodiments and uses within the scope of the present inventions even if such embodiments are not expressly disclosed herein. Additionally, even though some features, concepts or aspects of the inventions may be described herein as being a preferred arrangement or method, such description is not intended to suggest that such feature is required or necessary unless expressly so stated. Still further, exemplary or representative values and ranges may be included to assist in understanding the present disclosure; however, such values and ranges are not to be construed in a limiting sense and are intended to be critical values or ranges only if so expressly stated. Moreover, while various aspects, features and concepts may be expressly identified herein as being inventive or forming part of an invention, such identification is not intended to be exclusive, but rather there may be inventive aspects, concepts and features that are fully described herein without being expressly identified as such or as part of a specific invention. Descriptions of exemplary methods or processes are not limited to inclusion of all steps as being required in all cases, nor is the order that the steps are presented to be construed as required or necessary unless expressly so stated.

What is claimed is:

**1**. A percussive massager comprising:

a housing;

10

a piston having a proximal end and a distal end, the distal end of the piston having a bore;

a motor operatively connected to the proximal end of the piston, wherein the motor is configured to cause the piston to reciprocate at a first speed along a longitudinal axis;

a bearing that assists in constraining the piston to reciprocate along the longitudinal axis;

a drive mechanism that determines a predetermined stroke length of the piston; and

a quick-connect system comprising the distal end of the piston and a first massaging head, wherein the quick-connect system allows a proximal end of the first massaging head to be inserted into or removed from the bore while the piston reciprocates the predetermined stroke length at the first speed.

**2**. The percussive massager of claim **1**, wherein the motor is configured to cause the piston to reciprocate at a second speed.

**3**. The percussive massager of claim **1**, further comprising:

a control panel positioned on an exterior of the housing.

**4**. The percussive massager of claim **3**, wherein the control panel is configured to display one or more visual indicators.

**5**. The percussive massager of claim **1**, further comprising a handle portion on the housing and a flywheel, wherein the handle portion is on an opposite side of the flywheel with respect to the motor.

**6**. The percussive massager of claim **1**, wherein the motor has an output shaft that is configured to rotate about a rotation axis, and wherein the drive mechanism comprises:

a flywheel operatively connected to the output shaft of the motor to rotate about a flywheel axis, the output shaft extending into the flywheel along the flywheel axis; and

a crank pin extending from the flywheel, the crank pin being operatively connected to the piston.

**7**. The percussive massager of claim **6**, further comprising a handle portion on the housing, wherein the motor and the handle portion are on opposite sides of a plane perpendicular to the flywheel axis that extends through the flywheel.

**8**. The percussive massager of claim **6**, further comprising a handle portion on the housing, wherein the motor and the handle portion are on a same side of a plane perpendicular to the flywheel axis that extends through the flywheel.

**9**. The percussive massager of claim **6**, wherein an offset between the flywheel axis and an axis of the crank pin determines the predetermined stroke length of the piston.

**10**. The percussive massager of claim **6**, wherein the motor is directly connected to the flywheel, and wherein the crank pin is directly connected to the flywheel.

**11**. The percussive massager of claim **1**, wherein the bore comprises a substantially cylindrical bore.

**12**. The percussive massager of claim **1**, further comprising a substantially cylindrical structure within the bore.

**13**. The percussive massager of claim **12**, wherein the substantially cylindrical structure comprises a cylindrical seat.

**14**. The percussive massager of claim **12**, wherein the substantially cylindrical structure comprises a magnet.

**15**. The percussive massager of claim **1**, wherein the proximal end of the first massaging head has a pocket to receive the distal end of the piston.

\* \* \* \* \*

# Exhibit B

 Outlook

---

### RE:[CASE 17389615681] Notice: Amazon Patent Evaluation Express Program – Action Required

---

**From** patent-evaluation@amazon.com <patent-evaluation@amazon.com>
**Date** Wed 2025-03-12 23:29
**To** heyahui99@outlook.com <heyahui99@outlook.com>

📎 2 attachments (534 KB)
Amazon Patent Evaluation Express Procedure.pdf; Hyperice Executed Agreement.pdf;

Hello,

We received a report from a patent owner who believes the items listed at the end of this email infringe their U.S. Patent No. 12,208,051.

If you wish to continue selling the items listed at the end of the email, you have two choices.

First, you can choose to resolve your claim with the patent owner directly within the next three weeks. If we receive a retraction from the patent owner within the next three weeks, we will allow you to continue selling the items listed at the end of this email. The patent owner's contact information is as follows:

Hyperice IP Subco, LLC, a wholly-owned subsidiary of Hyper Ice, Inc.
barnold@hyperice.com
525 Technology Drive, Suite 100, Irvine, CA 92618

If the patent owner agrees to retract their complaint, they must send the retraction directly to us at patent-evaluation@amazon.com. Forwarded retractions will not be accepted. Another option is to resolve the claim with the patent owner in a federal district court case. If you are already engaged in a patent lawsuit with the patent owner, or if you file a lawsuit against the patent owner for declaratory judgment of non-infringement of the asserted patent, please provide us with a copy of the relevant complaint within the next three weeks, and you may continue selling the items listed at the end of the email while the lawsuit proceeds.

Second, you can choose to participate in neutral evaluation of the patent owner's claim. Amazon's neutral evaluation procedure is described in the attached document titled "Amazon Patent Evaluation Express Procedure." Please read this document carefully and note that payment of a deposit is required. If you choose to participate in the neutral evaluation, you must agree to the attached Amazon Patent Evaluation Express Agreement, complete Exhibit 2 of the Agreement, "Seller-Supplied Information," and return the completed Agreement to patent-evaluation@amazon.com within three weeks.

Please note that participation in the evaluation process does not guarantee that you will be able to continue to sell the items listed at the end of this email following the evaluation. If the evaluator decides that the items likely infringe, we intend to remove them from Amazon.com. If, however, the evaluator decides the items likely do not infringe, we will not remove your listings from Amazon.com,

and your deposit may be refunded in part or in full.

If you do not either resolve your claim with the patent owner directly, or agree to participate in the neutral evaluation process, we will remove the listings at the end of this email from Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

ASIN: B0CNKFX79R
B0D8VN56S1
Infringement type: Patent
Patent Number: 12,208,051
Case ID: 17389615681

You can learn more about your account health in the Performance section of Seller Central (https://sellercentral.amazon.com/gp/seller-rating/pages/performance-summary.html).

Neutral Patent Evaluation Team
Amazon.com

--

# Exhibit C

G. P. ELMEN.
VIBRATOR.
APPLICATION FILED JUNE 14, 1918.

1,339,179.

Patented May 4, 1920.
2 SHEETS—SHEET 1.



INVENTOR
George P. Elmen.
BY
Fred J. Dieterich & Co.
ATTORNEYS

G. P. ELMEN.

VIBRATOR.

APPLICATION FILED JUNE 14, 1918.

1,339,179.

Patented May 4, 1920.

2 SHEETS—SHEET 2.



Fig.2.

Fig.6.

Fig.5.

Fig.7.

INVENTOR

George P. Elmen

BY

Fred J. Dieterich Ho.

ATTORNEYS

37

# UNITED STATES PATENT OFFICE.

GEORGE P. ELMEN, OF LINCOLN, NEBRASKA.

VIBRATOR.

**1,339,179.**     Specification of Letters Patent.     **Patented May 4, 1920.**

Application filed June 14, 1918. Serial No. 240,045.

*To all whom it may concern:*

Be it known that I, GEORGE P. ELMEN, a citizen of the United States, residing at Lincoln, in the county of Lancaster and State of Nebraska, have invented certain new and useful Improvements in Vibrators, of which the following is a specification.

This invention has reference to certain new and useful improvements in vibrators, especially those of the massage type and the invention primarily has for its object to provide a vibrator in which two distinctly different strokes, one a percussion stroke and the other a brushing stroke, can be obtained or a combination of the said two strokes may be had.

Another object of my invention is to provide, in a device of the character stated, an improved construction of the controlling means for setting the power transmission connections between the crank disk and the applicator or plunger, that is simple and inexpensive in the manufacture thereof, by which the several adjustments can be practically instantly made for adapting the applicator to the percussion stroke, the brushing stroke, or the combination or mixed stroke.

With other objects in view that will hereinafter appear, my invention embodies, in a vibrator of the character outlined, certain details of construction and combination of parts specifically brought out in the following description and the appended claims and illustrated in the accompanying drawings, in which:

Figure 1 is a perspective view of my invention.

Fig. 2 is a longitudinal section thereof taken practically on the line 2—2 on Fig. 3, parts being in elevation.

Fig. 3 is a cross section thereof taken on the line 3—3 on Fig. 2, the shifting or controlling members of the power transmission connected with the applicator arm, being positioned to impart a percussion stroke to the said applicator arm.

Fig. 4 is a detail cross section of the housing, the upper end of the applicator or plunger and the stroke controller devices, the latter being shown as adjusted for imparting the brushing motion to the plunger or applicator.

Fig. 5 is a similar view, the parts being adjusted for imparting the combined brushing and percussion stroke to the applicator.

Fig. 6 is a perspective view of the slotted head block.

Fig. 7 is a detail plan view that illustrates the correlation of the controlling or head block turning member and the driving member that attaches to the crank disk and imparts movement to the head block.

In the practical arrangement of my invention, the main or supporting casing 1, in which the driving (electric) motor is mounted and which has the usual handle, is of the conventional form, as indicated in Fig. 1.

The front section 2 of the casing supports the operating parts of the vibrator and to it is attached, by any suitable means, a housing 3 for the power transmission devices that connect with the applicator or plunger arm 10, presently again referred to.

The housing 3 includes a neck 6 in which the applicator arm 10 is reciprocably mounted in the usual way with the lower end thereof extended beyond the said neck 6, as shown.

In my improved construction of vibrator, the upper end of the plunger or applicator member 10 is formed as a ring-shaped band 11 to fit over a vertically reciprocable and rotatable head block 7, engaged by the band 11 and the said end, as shown, carries a steel bearing sleeve 8, which latter may, however, in practice, be omitted.

The head block 7 has two elongated recesses or slots 70—71, one at each end and the said slots extend across their respective ends and are arranged at right angles to each other, and to make the head block of light weight, the slots may extend inwardly nearly close enough to merge, as is clearly shown in Figs. 2, 6 and 7.

9 designates the motor shaft, the outer end of which extends into the housing 3 and upon the said end is mounted a crank disk 12 that is located in close relation to the inner face of the head block 7.

By referring now more particularly to Figs. 2 and 3 of the drawings, it will be noticed a short bar or member 13 seats within the slot 70 on the inner face of the block 7 and connects with the eccentric stud pin 12ᵃ of the disk 12.

A similar member that is hereinafter termed the controller block 14 seats in the elongated recess or slot 71 in the outer face of the head block and to such controller block 14, midway the ends thereof, is fixedly

**2**                                   1,339,179

connected a short spindle 15ª that journals
in the front side of the housing and which
carries a thumb knob 15, as shown.

To hold the said knob 15 and the head
5 block to their adjusted position, a spring
disk washer 17 is mounted upon the spindle
15ª between the knob and the housing and to
properly center the block 7, a similar spring
washer 18 is located between the head block
10 7 and the inner wall of the housing 3, as is
clearly shown in Fig. 2.

It is to be understood that the applicator
or plunger arm operates through a rocker
bar, indicated by x on Fig. 2 mounted in the
15 lower end of the neck 6 to allow for the side-
wise or brushing movement of the said ap-
plicator or plunger arm.  The thumb knob
15 also serves as an indicator for designating
the set of the transmission mechanism, the
20 outer face of the housing 3 having suitable
indication points a, b, and c that designate
the percussion, the brushing, and the com-
bined percussion and brushing strokes re-
spectively for which the plunger may be ad-
25 justed.

From the foregoing description taken in
connection with the accompanying draw-
ings, the complete construction, the manner
of its operation, and the advantages of
30 my improved vibrator construction will be
readily apparent to those skilled in the art
to which my invention relates.

The connection of the controller block
with the head block 7 is such that the said
35 block 7 can be instantly adjusted within the
ring-like head of the applicator or plunger
10 by turning the said knob 15.

By turning the knob 15 to the vertical po-
sition, the controller block or bar rotates the
40 block 7 until the said block or bar 14 is in
the vertical position and the short bar 13 is
at a horizontal position, thereby providing
for the up and down or full percussion stroke
of the applicator.

45 When the thumb knob is turned, in either
direction, right or left, to the horizontal po-
sition, the other member 13 assumes the ver-
tical position and owing to the peculiar con-
nection of the head block 7 with the said
50 member 13 and with the applicator head
portion, brushing movement of the applica-
tor is provided for and, by setting the
thumb knob midway between the two posi-
tions mentioned, the combination or mixed
55 stroke of the applicator is had.

What I claim is:

1. In a vibrator, a support, an applicator
having longitudinal and lateral bearing in
the said support, a drive shaft, a connection
60 between the drive shaft and the said appli-
cator, and means for varying the direction
of movement of the applicator, the said
means including a head block having rota-
ble connection and plunger movement with
6 the applicator, the said head block having a

transversely elongated socket in that face
adjacent the drive shaft, a follower mounted
in the said socket, and crank pin and disk
connections that join the drive shaft and
the follower, and means operable externally 70
of the casing for setting the head block to lo-
cate the follower at a horizontal, a vertical
or a midway position relatively to the drive
shaft, said means including a tension device
for holding the head block to the shifted po- 75
sition.

2. In a vibrator, a support that includes a
housing having a neck provided with a
spherical bearing seat, an applicator arm,
one end of which extends through the said 80
bearing seat and the housing and whose
other end terminates in a ring-like band, a
drive shaft, a crank disk on that end of the
shaft adjacent the applicator, a power trans-
mission connecting the crank disk and the 85
applicator, said transmission consisting of a
cylindrical head that forms the bearing
connection for the ring-like band of the ap-
plicator arm, the said head having a trans-
versely extended elongated socket in each 90
of the opposite ends thereof, the said sockets
being disposed at right angles to each other,
a controller block mounted in the socket in
the outer face of the head, a bar held in the
socket in the other face of the head with 95
which the crank disk pivotally connects mid-
way the ends thereof, the controller block
having an attached spindle that journals in
and extends through the housing, a thumb
knob attached to the outer end of the spindle, 100
whereby the controller block can be turned
to rotate the head to bring the crank disk
connected bar at the different positions for
effecting the desired changes of motion of
the applicator, and tension devices for hold- 105
ing the head block to the thumb knob con-
trolled position.

3. In a vibrator, a support, a first mo-
tion crank shaft, a vibrator plunger arm, an
oscillatable bearing in which said plunger 110
arm is reciprocably mounted, a circular head
block having a diametrical groove on each
side, one groove being extended at right
angles to the other, a strap, carried by said
plunger arm, in which said circular head 115
block is located, a slide operable in one of
said head block grooves and apertured to re-
ceive the crank of the first motion shaft, a
second slide operable in the other groove of
said head block, an adjusting shaft mounted 120
in a bearing in said support and keyed to
said second slide block, and means by which
said adjusting shaft may be turned to turn
said head block for purposes of adjustment
and thereby to vary the stroke of said 125
plunger arm, and means for holding said
adjusting shaft in the positions to which it
is set.

GEORGE P. ELMEN.

# Exhibit D

Case 8:25-cv-00657-JWH-DFM   Document 1   Filed 04/01/25   Page 41 of 72   Page ID #:41



US 20070150004A1

(19) **United States**

(12) **Patent Application Publication** (10) Pub. No.: **US 2007/0150004 A1**

Colloca et al. (43) Pub. Date: **Jun. 28, 2007**

(54) **ELECTROMECHANICAL ADJUSTING INSTRUMENT**

(76) Inventors: **Christopher J. Colloca**, Phoenix, AZ (US); **Jeffrey Keller**, Burlington, VT (US)

Correspondence Address:
**VENABLE, CAMPILLO, LOGAN & MEANEY, P.C.**
**1938 E. OSBORN RD**
**PHOENIX, AZ 85016-7234 (US)**

(21) Appl. No.: **11/567,007**

(22) Filed: **Dec. 5, 2006**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 11/162,067, filed on Aug. 26, 2005, now Pat. No. 7,144,417.

(60) Provisional application No. 60/779,785, filed on Mar. 7, 2006. Provisional application No. 60/604,787, filed on Aug. 26, 2004. Provisional application No. 60/604, 738, filed on Aug. 26, 2004.

**Publication Classification**

(51) Int. Cl.
*A61H   23/00*   (2006.01)
(52) U.S. Cl. ........................... **606/238**; 606/237; 601/108

(57) **ABSTRACT**

A chiropractic adjusting instrument comprising a housing; a thrust nose piece and an impact head to contact a body; a preload switch plunger; a dampening spring; a solenoid having a core; a preload spring; a recoil spring; an electronic pulse system operatively connected to a power source to provide alternating current for energizing the solenoid to impart impulse energy from the core to the thrust nose piece which is reproducible and independent of the power source; and a trigger system for triggering the electronic pulse system comprising an switch activated by the preload switch plunger. Preferably, the chiropractic adjusting instrument includes one or more of the following: an intelligent universal AC power converter; optimized force-time waveform; pulse mode operation; a sensing device having an sense output and a suite of electromechanical components designed to promote reproducible dynamic force impulses and safe operation.





**Fig. 1**



**Fig. 2**



*Fig. 3*



*Fig. 4*



*Fig. 5*



*Fig. 6*



*Fig. 7*



*Fig. 8*



## Fig. 9



## Fig. 10



Fig. 11



**Fig. 12**



**Fig. 13**



**Fig. 14**

**Fig. 14A**



**Fig. 14B**



**Fig. 14C**



**Fig. 14D**



*Fig. 15*



Fig. 16



Fig. 17

Patent Application Publication    Jun. 28, 2007   Sheet 12 of 14      US 2007/0150004 A1



**Fig 18-A**



**Fig 18-B**

002

Read Accelerometer (Acc)
Find neg. peak Acc (-Acc)
Find pos. peak Acc (+Acc)
Calculate +Acc-(-Acc) = ppAcc(0)
$\Delta t = \Delta t(+Acc) - \Delta t(-Acc)$
{Trigger ≤ t ≤ 25 ms}

Store
ppAcc(0)

Set Multiple Pulse Rate (PR)
PR = $\Delta t(s) \cdot 10,000$
{2 ≤ PR ≤ 10}

002A

Trigger On
(multiple pulse)

no

001

yes

Read Accelerometer (Acc)
Count = Count + 1
Find -Acc, +Acc (-5ms prior to pulse)
Calculate ppAcc, $\Delta$ppAcc
$\Delta$ppAcc = [ppAcc-ppAcc(0)]
{-5 ms ≤ t ≤ 25 ms}

003



Fig 18-C

1

## ELECTROMECHANICAL ADJUSTING INSTRUMENT

### FIELD OF THE INVENTION

[0001]   The present invention relates to the field of adjusting instruments and methods. Particularly, it involves the field of electromechanical manipulation/adjusting instruments used to apply controlled dynamic forces to the human body. More particularly, the invention has an improved force-time waveform and a sensor-controlled pulse mode.

### BACKGROUND

[0002]   It is well known in the chiropractic art that humans may suffer from musculoskeletal pain. Misalignment or other mis-adjustment or subluxation of the spine and bones of the human body can lead to musculoskeletal discomfort and a variety of related symptoms. Adjustment of the spine to a healthy alignment may have substantial therapeutic effects.

[0003]   There is a need to create electromechanical adjusting instruments that apply a controlled and reproducible impulse energy regardless of the power source or voltage fluctuation; to create electromechanical adjusting instruments that have a waveform tuned to the nature of the body to allow more bone movement and broader neural receptor stimulation with less force; and to have an interlock so that the device cannot be triggered unless the appropriate preload is attained. There is also a need to use the electric impulses applied to the solenoid to calibrate the instrument and to diagnose the electric impulses applied to the solenoid; to select pre-determined force settings quickly and easily; to be notified of the proper application of preload prior to thrusting; to administer single or multiple thrusts by means of the device trigger; to provide a thrust nose piece to accept interchangeable impact heads; and to reduce vibrations to the operator to reduce stress and provide comfort.

[0004]   Information relevant to hand held devices can be found in U.S. Pat. No. and Patent Publication Nos. 4116235; 4498464; 4682490; 4716890; 4841955; 4984127; 5085207; 5618315; 5626615; 5656017; 5662122; 5897510; 6165145; 6379375; 6503211; 6792801; 6537236; 6539328; 6602211; 6663657; 6682496; 6702836; 6805700; and 20020082532; 20020177795; 200300114079; 20050131461; each of the foregoing in U.S. Pat. No. and Patent Publication Nos. is hereby incorporated herein by reference. Each one of these referenced items, however, suffers from disadvantages including; for example, one or more of the following.

[0005]   One disadvantage is that they are not able to use more than one electric power source to provide reproducible impulse energy to the body.

[0006]   Another disadvantage is that they do not have trigger system and pulse system including an interlock such that the device cannot be activated with an appropriate preload.

[0007]   Another disadvantage is that they do not have a way to use the electric impulses applied to the solenoid to calibrate the instrument and to diagnose the electric impulses applied to the solenoid.

[0008]   Another disadvantage is that they do not have an interlock so that the device cannot be triggered unless the appropriate preload is attained.

[0009]   Another disadvantage is that they do not create adjusting instruments that have a waveform specifically tuned to the nature of the body to allow more bone movement and more neural receptor stimulation with less force.

[0010]   Another disadvantage is that they do not provide a thrust nose piece to accept interchangeable impact heads or reduce vibrations to the operator to provide comfort.

[0011]   Another disadvantage is that they do not have a preload indication system.

### SUMMARY

[0012]   It is an object of the present invention to provide a chiropractic adjusting instrument comprising a housing having an opening; a thrust nose piece movably mounted in the housing and comprising a preload side and an outer end including an outer end shank for coupling to at least one impact head wherein the opening allows the coupled outer end shank impact head to contact a body; a preload switch plunger coupled to the preload end of the thrust nose piece; a dampening spring interposed between the housing and the outer end of the thrust nose piece or a first inner housing stop having a first passage to accept the thrust nose piece; a solenoid mounted in the housing and comprising: a longitudinal axis and a core having a third passage to accept the preload switch plunger so that the core is movable along the longitudinal axis and is in alignment with the thrust nose piece; a preload spring interposed between the preload side of the thrust nose piece and a second inner housing stop having a second passage sufficient to accept the coupled preload switch plunger preload side; a recoil spring interposed between the core and the coupled preload switch plunger preload end; a third inner stop to prevent the normal urging of core away from the coupled preload switch plunger preload end and having a fourth inner passage to accept the preload switch plunger; a pulse system operatively connected to a power source to provide alternating current for energizing the solenoid to impart impulse energy from the core to the thrust nose piece which is reproducible independent of the power source; a trigger system for triggering the pulse system comprising an switch activated by the preload switch plunger. Additionally, in a preferred embodiment, a sensing device may be used to provide control. More preferably, the sensing device may be coupled to the nose piece. Most preferably, the sensing device is an accelerometer, a load cell or an impedance head, wherein the impedance head may preferably comprise the combination of an accelerometer and a load cell.

[0013]   The novel features that are considered characteristic of the invention are set forth with particularity in the appended claims. The invention itself, however, both as to its structure and its operation together with the additional object and advantages thereof will best be understood from the following description of the preferred embodiment of the present invention when read in conjunction with the accompanying drawings. Unless specifically noted, it is intended that the words and phrases in the specification and claims be given the ordinary and accustomed meaning to those of ordinary skill in the applicable art or arts. If any other meaning is intended, the specification will specifically state that a special meaning is being applied to a word or phrase. Likewise, the use of the words "function" or "means" in the Description of Preferred Embodiments is not intended to

indicate a desire to invoke the special provision of 35 U.S.C. §112, paragraph 6 to define the invention. To the contrary, if the provisions of 35 U.S.C. §112, paragraph 6, are sought to be invoked to define the invention(s), the claims will specifically state the phrases "means for" or "step for" and a function, without also reciting in such phrases any structure, material, or act in support of the function. Even when the claims recite a "means for" or "step for" performing a function, if they also recite any structure, material or acts in support of that means of step, then the intention is not to invoke the provisions of 35 U.S.C. §112, paragraph 6. Moreover, even if the provisions of 35 U.S.C. §112, paragraph 6, are invoked to define the inventions, it is intended that the inventions not be limited only to the specific structure, material or acts that are described in the preferred embodiments, but in addition, include any and all structures, materials or acts that perform the claimed function, along with any and all known or later-developed equivalent structures, materials or acts for performing the claimed function.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0014]   FIG. 1 is a side view of a preferred embodiment of the invention with one embodiment of an impact head depicted.

[0015]   FIG. 2 is a side exploded view of a preferred embodiment of the invention with one embodiment of an impact head depicted.

[0016]   FIG. 3 is a first end view of the preferred embodiment of the invention.

[0017]   FIG. 4 is a first end exploded view of the preferred embodiment of the invention.

[0018]   FIG. 5 is a second end view of the preferred embodiment of the invention.

[0019]   FIG. 6 is a top view of the preferred embodiment of the invention.

[0020]   FIG. 7 is a cross-sectional view of the preferred embodiment of the invention.

[0021]   FIG. 8 is a side view of the preferred embodiment of the electromechanical drive mechanism without the housing.

[0022]   FIG. 9 is a cross-sectional view of the preferred embodiment of the electromechanical drive mechanism without the housing and related springs.

[0023]   FIG. 10 is a cross-sectional view of the preferred embodiment of a thrust nose piece.

[0024]   FIG. 11 is an exploded view of the preferred embodiment of the electromechanical drive mechanism without the housing.

[0025]   FIG. 12 is a cross-sectional view of the preferred embodiment of the invention with the arrows showing the direction of movement along the thrust nose piece direction and the trigger direction.

[0026]   FIG. 13 is a cross-sectional view of the preferred embodiment of the invention with the arrows showing the direction of movement along the thrust nose piece direction and the trigger direction when returning to rest.

[0027]   FIGS. 14A-D are views of three preferred embodiments of the impact heads.

[0028]   FIG. 15 is a schematic view of one preferred embodiment of a circuit for an electronic pulse system.

[0029]   FIG. 16 is a cross-sectional view of one preferred embodiment of a sensing device and a thrust nose piece: (a) exploded view and (b) unexploded view.

[0030]   FIG. 17 is a flow diagram for control using the sensing device.

[0031]   FIGS. 18-A, 18-B, and 18-C are another flow diagram (program) for control using the sensing device.

## DESCRIPTION OF PREFERRED EMBODIMENTS

[0032]   Referring to the FIGS. 1-13 and 14A-D, there are depicted a preferred embodiments of the chiropractic adjusting instrument invention and its components. The preferred embodiment of the invention, generally referenced by 10, are depicted in FIGS. 1-6 and include a housing 12 that, in this preferred embodiment, is gun shaped having an alternating current power cord 40 and a shock absorbing grip 50. The chiropractic adjusting instrument 10 further includes an electromechanical drive mechanism 100, an electronic pulse system 200 and a trigger system.

[0033]   In the preferred embodiment, the housing 12 of the chiropractic adjusting instrument 10 has an opening 20 and an inside cavity 30 for mounting the electromechanical drive mechanism 100. Preferably, the housing is made of a non-conductive material such as plastic. As shown in preferred embodiment of FIG. 7, the inside cavity consists of a housing inside 102, a first inner housing stop 105, a second inner housing stop 110 and a third inner housing stop 115 and an interior cavity to place the electromechanical drive mechanism within the housing 10.

[0034]   FIGS. 7-11 show numerous views a preferred embodiment of the components of the electromechanical drive mechanism 100. Specifically, FIG. 11 shows a dampening spring 120, a thrust nose piece 130, a preload spring 145, a preload switch plunger 150 (comprising a plunger rod 151 and an plunger cap 152), a recoil spring 160, a coupler 170, a solenoid 180 having a core 185 and a shock absorber 190. In this preferred embodiment, the thrust nose piece 130 is adapted to be movably mounted in the housing 10 and includes an outer end 136, an outer end shank 138 adapted to couple to at least one impact head 70, and a preload side 131 adapted to couple to the preload switch plunger 145. In a more preferred embodiment, the thrust nose piece 130 further comprises a preload shank 133 and a preload end 134 having a cavity 135 adapted to the plunger cap 151 and a bore 139 adapted to the at least one impact head 70. In more preferable embodiment, the outer end shank 138 extends through the opening 20. The thrust nose piece 130 may be made of metals, such as steel, or other hard materials. In a most preferred embodiment shown in FIG. 16 (a) and (b), the thrust nose piece 130 is modified so that it is coupled to a sensing device 400 such as an accelerometer having a sense output 410. While the preferred embodiment shows the sensing device 400 may be coupled to the impact head

3

70 using the thrust nose piece **130**, the sensing device **400** may be located in other places. In a preferred embodiment shown in FIG. **16** (*a*) and (*b*), the thrust nose piece **130** may be separated in to a front nose piece **430** and a rear nose piece **420** such that the sensing device **400** may be coupled thereto. Preferably, the sense output **410** may be coupled to a sensing processing unit **440**, and more preferably the sense output **410** is coupled to the sensing processing unit **440** either by wire or by wireless transmission. Most preferably, the sensing processing unit **440** could then be used control the electronic pulse system by coupling the sensing processing unit to the electronic pulse system so that the dosage could be controlled. In an additional preferred embodiment the sensing processing unit could be coupled to or made integral with the programmable microprocessor **220** so that the dosage could be controlled. Other sensing devices exist such as analog peak detectors may be used.

[0035]   In the preferred embodiments shown in FIGS. **7** and **11**, the dampening spring is adapted to be mounted in the housing and interposed between the housing inside **102** and the first inner housing stop **105** or the outer end **136** of the thrust nose piece **130** depending on the position of the thrust nose piece **130** (see FIGS. **12** and **13**). In a more preferred embodiment as shown, the dampening spring is made of metal, such as steel, or other material having sufficient spring force.

[0036]   In the preferred embodiments shown in FIGS. **7** and **11**, the preload spring **145** is interposed between the second inner housing stop **110** and the preload side **131** of the thrust nose piece **130**. In a more preferred embodiment as shown, the preload spring is made of metal, such as steel, or other material having sufficient spring force.

[0037]   In the preferred embodiments shown in FIGS. **7** and **11**, the preload switch plunger **150** couples to thrust nose piece **130**. In one embodiment the preload switch plunger **150** may be integral with the thrust nose piece **130**. In another embodiment, the preload switch plunger **150** is a single piece and may couple with the thrust nose piece **130**; more preferably coupling with the preload end **134**. In yet another preferred embodiment, as shown in FIG. **11**, the preload switch plunger **150** comprises a plunger rod **151** and a plunger cap **152**. The preload switch plunger **150** may be made of metal or plastic or combinations thereof Preferably, the preload switch plunger **150** is not conductive to the thrust nose piece **130**. In the preferred embodiment shown in FIG. **12**, when the thrust nose piece has compressed the preload spring sufficiently to the preload position, the preload switch plunger extends to close switch **310** and activate switch **330**.

[0038]   As depicted in the preferred embodiments of FIGS. **7**, **8**, **9** and **11**, the solenoid **180** has an core opening **181** and a core **185** that is movable and a longitudinal axis **184**. The solenoid **180** is mounted inside the housing **12** in a stationary position such that the core **182** is movable along the longitudinal axis **184** and is in alignment with the thrust nose piece **130**. Further, the core has a third passage **186** transversing the entire length of the core **185** to accept the preload switch plunger **150**. The core **182** is made of material that is electromagnetically coupled to the solenoid **180** when the solenoid **180** is energized by a current.

[0039]   As depicted in the preferred embodiments of FIGS. **7**, **8** and **11**, the recoil spring **160** is interposed between the core **182** and the coupled preload switch plunger preload end

and is chosen to reduce the backward forces generated and to place the core in the proper position when the chiropractic adjusting instrument **10** is at rest. In a more preferred embodiment as shown, the recoil spring is made of metal, such as steel, or other material having sufficient spring force. As shown in FIGS. **7**, **9** and **11**, a preferred embodiment of the chiropractic adjusting instrument **10** includes a coupler **170** between the core **182** and the recoil spring **160**. Further, in the more preferred embodiment the coupler **160** is made of a nonconductive material such as plastic. In the preferred embodiment shown in FIGS. **7**, **9** and **11**, the recoil spring is interposed between the coupler **170** and the preload switch plunger **150**.

[0040]   As shown in FIG. **7**, the housing **12** includes a first inner housing stop **105** having a first passage to accept the thrust nose piece **130**, a second inner housing stop **110** having a second passage sufficient to accept the coupled preload switch plunger preload end, and a third inner stop **115** having a fourth inner passage to accept the preload plunger **150**.

[0041]   In a preferred embodiment, the chiropractic adjusting instrument **10** also includes a shock absorber **190** having a shock absorber passage **192** between the core **182** and the third inner stop **115**. The shock absorber **190** is made of an energy absorbing material such as rubber.

[0042]   The chiropractic adjusting instrument **10** also includes an electronic pulse system **200** operatively connected to an electrical power source to provide alternating current for energizing the solenoid **180** to impart impulse energy from the core to thrust nose piece **130** that is reproducible independent of the power source. An example of one preferred embodiment of a circuit for an electronic pulse system is shown in FIG. **15**. In the preferred embodiment of the invention, the pulse system **200** includes at least a transformer **210**, a programmable microprocessor **220**, a field effect transistor **230** and two high voltage switches **240** and **250** to turn the solenoid on and off In the preferred embodiment of the invention, the chiropractic adjusting instrument **10** can use any alternating current electric power source having a voltage between 90 and 265 volts and a frequency between 50 and 60 hertz. Specifically, the transformer **220** converts part of the alternating current electricity into direct current electricity to power the pulse circuitry including the programmable microprocessor **220**. The programmable microprocessor **220** then diagnoses/analyzes the voltage and the current to control the on-off duration of the high voltage switch or switches (duration of the pulse to the solenoid) to energize the solenoid reproducibly so that a pulse system produces constant pulse duration or impulse, and more preferably an impulse that is substantially a half sine wave, and more preferably of between 2 to 5 milliseconds pulse width. Further, the programmable microprocessor **220** preferably may diagnose the device status; for example, whether or not preload is achieved. Table 1, below, lists one preferred operation of the programmable microprocessor **220** control of the chiropractic adjusting instrument:

4

TABLE 1

1. After power is turned on, a red LED is energized to indicate power to the chiropractic adjusting instrument.
2. The preload switch is activated by depression of the preload switch plunger causing the red LED to be de-energized and a green LED to be energized to indicate that the chiropractic adjusting instrument is armed and successful preload has been achieved.
3. Activating the trigger switch using the trigger causes both the red and green LED to de-energize and causes the microprocessor the measure the line frequency and voltage, preferably twice.
4. If the line voltage or frequency are outside the test limits, the red LED is energized to flash and the chiropractic adjusting instrument will not fire until the voltage and frequency are retested and fall within the test limits.
5. If the line voltage and frequency are within the test limits, the duration of the pulse to the solenoid is calculated by an equation or determined by one or more look-up tables and the green LED is energized to flash and the chiropractic adjusting instrument fires once or multiple times as selected. In the preferred embodiment, the duration of the pulse to the solenoid will be determined to produce a pulse impact and preferably the same amount of energy will be imparted for each user specified setting (e.g. the velocity of a solenoid core can be varied by varying the force with which it is accelerated into the solenoid which is proportional to the current flowing into the coils of the solenoid which can be controlled by the duration of the pulse to the solenoid).

[0043] In an even more preferred embodiment, the programmable microprocessor **220** is coupled to the sensing device **400** to evaluate the sense output signals. Most preferably, a transmission device (**440**) and sensing device (**400**) may be included so that data may be transmitted to a computing device (not shown) such as general or specific purpose computer. In a preferred embodiment, the maximum spinal mobility is found using a procedure set forth in FIG. **17**, where the numbers refer to:

[0044] **510**—Initialize the data, reset the peak maximum reading, and reset the detector circuit and storage device (preferably the microprocessor **220**)

[0045] **520**—Recognize triggering system has been actuated; if yes **501** proceed with at least two pulses;

[0046] **530**—From the first impulse delivered, read the accelerometer peak signal from the received from the sensing device **400** contained within the front nose piece (**430**) and rear nose piece (**420**).

[0047] **540**—Store the first accelerometer peak signal for comparison with additional accelerometer peak signals

[0048] **550**—From each additional impulse delivered, read the accelerometer peak signal from the received from the sensing device **400** received

[0049] **560**—Compare the peak signals of **550** to **530** to determine if the maximum spinal mobility has been obtained; if yes **501** proceed to **580**; else (no **502**) proceed to **570**;

[0050] **570**—Count the number of pulses administered; if the number of pulses exceeds a predetermined amount is yes **501**, proceed to **580**; else (no **502**) and continue with next pulse and proceed to **550**;

[0051] **580**—Disarming the chiropractic adjusting device; Initialize the data, reset the peak maximum reading, and reset the detector circuit and storage device (preferably the microprocessor **220**).

[0052] In yet another preferred embodiment, the maximum spinal mobility is found using a procedure (program) set forth in FIGS. **18**-A, **18**-B and **18**-C as follows: the program has a main loop (entry point is 001), which initial-

izes the pulse rate (PR, initially 6 Hz), flags and counters, and is the starting point each time the trigger is pressed and released; after initializing the variables, the program waits for a trigger and polls the accelerometer signal, computing an average acceleration, which should be between 2 volts and 3 volts (nominally 2.5 volts) to be a good signal; if the signal is good, then the normal red/green LED indicator is in effect, otherwise the LED flashes red or Fault (this condition may arise if the instrument is banged against something or accelerated while the trigger is not being pulled, but will reset once the instrument is stable; however, the accelerometer is a dynamic sensor and will not respond to low frequency disturbances such as waving the instrument around); continuous flashing indicates a serious problem with the accelerometer (for example, a loose sensor, a broken wire, etc.); once a trigger is initiated (FIG. **18**-B), the peak-to-peak acceleration (ppAcc) is calculated using the peak negative (−) and peak positive (+) signals obtained during a period of 25 ms following the trigger (since in this preferred embodiment the accelerometer is installed such that the negative acceleration precedes the positive acceleration); the program stores the initial ppAcc(0) and determines the time duration (dt) between the positive and negative peaks and sets the pulse rate using this time interval (in this preferred embodiment the allowable range is 2 Hz to 10 Hz); if the trigger stays on (multiple pulse mode), then the program waits for the next pulse and once again determines ppAcc (preferably the program determines when to look for the next pulse based on the pulse rate and, more preferably the program looks 5 ms prior to the anticipated next pulse— as there may be some large signal changes following each pulse and therefore it would be best to "window" the peak detector); the pulse counter (Count1) is incremented and the change in acceleration (dppAcc) relative to the first pulse is determined; if the trigger is off (clinician has released the trigger), then the program returns to the main loop (entry point 001) and initializes all variables; The next portion of the program looks for several conditions: First, if the counter (Count1) is greater than 20, then the program beeps twice and returns to the main loop (entry point 001); second, if Count1 is less than 20, then the program increments/decrements the stiffness flag (Flag1) based on the change in acceleration relative to the first pulse (that is when dppAcc

5

is less than or equal to zero, this indicates a decreasing acceleration (stiffness) relative to the first pulse and Flag1 is decremented, and when dppAcc is greater than zero, this indicates an increasing acceleration (stiffness) relative to the first pulse and Flag1 is incremented; for example, if there were 5 pulses greater than ppAcc(0) and 1 pulse less than ppAcc(0), the flag would be Flag1 =+4); third, the program checks whether Flag1 is greater than 5 or less than −5; if greater than 5, the program generates a long beep and returns to the main loop (entry point 001); if less than −5, then the program generates a short beep and returns to the main loop (entry point 001); the beeps indicate what conditions are occurring in the program and provide useful feedback (preferably the "beeps" can be unobtrusive tones generated using a small piezo speaker and can be disable the tones later if desired); fourth, if Flag1 is not less than or equal to 5, then the program looks at the pulse counter (Count1) and if this is equal to 10, then the program may reset the Pulse Rate to 1 Hz higher or lower than the initial setting (again allowable range is 2 Hz to 10 Hz) based on the sign of the stiffness Flag (if Flag1=0, then the rate remains unchanged); for example, decreasing stiffness may decrease the pulse rate after 10 cycles and vice versa (alternatively, the direction of the pulse rate change can be set to the opposite of this); the program then returns to the "Trigger On" decision point (entry point 002A), and the cycle repeats; (in another preferred embodiment, the increment/decrement the pulse rate may be changed by 2 at a count of 10 or increment/decrement the pulse rate by 1 at a count of 15 —which would give a much more dramatic shift in frequency); preferably, each of the conditions should be variables so that they can be modified easily in order to tune the instrument response. In this preferred embodiment, if a sensor "Fault" occurs, then the program would run the "Default" program, which is simply a single pulse and 13 pulse program used by the Impulse device. Additional features such as looking at the relative change in the peak-to-peak acceleration response (% change in acceleration relative to pulse 1) may be incorporated, and/or instrument force setting may be controlled by the physician.

[0053]    In a more preferred embodiment, the pulse system 200 includes a level switch 290 having at least two positions for controlling the pulse duration and mode of single or multiple pulses. In another more preferred embodiment shown in FIG. 4, the pulse system 200 includes an access port 285 which for testing, evaluation, downloading of data and programming of the pulse system 200 including the programmable microprocessor 220; more preferably, the pulse system 200 would also include additional memory storage devices for collection of pulse data. In another more preferred embodiment, the pulse system includes an indicator 270 to provide power-on indication, preload ready indication, and error indication; most preferably the indicator is selected from sound indicators and visual indicators such as speakers, light emitting diodes or other auditory output devices or visual output devices. In a most preferred embodiment in FIGS. 3 and 4, the indicator is at least one light emitting diode which indicates power, appropriate preload and pulse mode, and error modes using combinations of blinks and colors, such as red and green.

[0054]    In the preferred embodiment showing in FIG. 7, the chiropractic adjusting instrument 10 also includes a triggering system for triggering the pulse system 200. In this preferred embodiment, the trigger system includes a switch

310 activated by the preload switch plunger 150. The switch acts as an interlock or safety device such that pulse system 200 can not be activated unless the switch 310 activated. The switch 310 can be any type of optical, electrical, mechanical or magnetic switch and may be configured in many ways such that it is coupled to the electromechanical drive mechanism to prevent firing unless activated. In the preferred embodiment shown in FIG. 7, the switch is an optical switch such that the preload switch breaks the optical beam. In the preferred embodiment, the triggering system also includes a trigger switch 320, a trigger 330 and a trigger spring 340 so the operator can activate the trigger switch 320 causing the electronic pulse system 200 to fire. The trigger switch 320 can be any type of optical, electrical, mechanical or magnetic switch, but in the preferred embodiment shown in FIG. 7, the switch is an optical switch such that the trigger breaks the optical beam.

[0055]    In the preferred embodiment shown in FIG. 12, there is a preload activation position such electromechanical drive mechanism 100 is compressed or preloaded (by placing the impact head on a body or surface, not shown) so that the switch 310 is activated such that chiropractic adjusting instrument 10 may be fired by depressing the trigger 330. FIG. 13, shows the movement of the electromechanical drive system 100 and the trigger 330 to the rest (or initial position).

[0056]    The preferred embodiments shown in FIGS. 14 and 14A-D show various preferred embodiments of the impact head 70 including a cushion(s) 73, an impact body 75 and an impact coupler 78. In these preferred embodiments, the cushions are of some soft material such as rubber, the impact body is made of metal such as aluminum, and the impact coupler is typically a soft material such as an o-ring to form a press fit with the thrust nose piece 130.

[0057]    Alternative preferred embodiments of this invention are contemplated; for example, the use of conventional or rechargeable batteries to power electromechanical drive mechanism 100. More preferably the batteries are removable for changing or recharging.

[0058]    The preferred embodiment of the invention is described above in the Drawings and Description of Preferred Embodiments. While these descriptions directly describe the above embodiments, it is understood that those skilled in the art may conceive modifications and/or variations to the specific embodiments shown and described herein. Any such modifications or variations that fall within the purview of this description are intended to be included therein as well. Unless specifically noted, it is the intention of the inventor that the words and phrases in the specification and claims be given the ordinary and accustomed meanings to those of ordinary skill in the applicable art(s). The foregoing description of a preferred embodiment and best mode of the invention known to the applicant at the time of filing the application has been presented and is intended for the purposes of illustration and description. It is not intended to be exhaustive or to limit the invention to the precise form disclosed, and many modifications and variations are possible in the light of the above teachings. The embodiment was chosen and described in order to best explain the principles of the invention and its practical application and to enable others skilled in the art to best

utilize the invention in various embodiments and with various modifications as are suited to the particular use contemplated.

What is claimed is:

1. A chiropractic adjusting instrument comprising:

a sensing device having an sense output,

an impact head coupled to the sensing device,

a housing containing

an electromechanical drive mechanism having a pre-load activation position and coupled to the impact head-sensing device,

an electronic pulse system coupled to the sense output and coupled to an electric power source and the electromechanical drive mechanism, and

a triggering system coupled to the electromechanical drive system by a switch and to the electronic pulse system by a trigger switch;

wherein the trigger switch can not activate the electronic pulse system to energize the electromechanical drive mechanism unless the electromechanical drive mechanism is in the preload activation position to activate the switch and wherein the impact head motion causes the sense output to control the electronic pulse system.

2. The chiropractic adjusting instrument as recited in claim 1 wherein the sensing device is selected from the group consisting of an accelerometer, load cell, or impedance head

3. The chiropractic adjusting instrument as recited in claim 2 wherein the electronic pulse system comprises a sensing processing unit to evaluate the sense output.

4. The chiropractic adjusting instrument as recited in claim 3 wherein the sensing processing unit is coupled to a programmable microprocessor used to control the electronic pulse system.

5. The chiropractic adjusting instrument as recited in claim 4 wherein the sensing processing unit is the programmable microprocessor.

6. The chiropractic adjusting instrument as recited in claim 3 further comprising a transmission device to transmit data between a computing device and the chiropractic adjusting instrument.

7. The chiropractic adjusting instrument as recited in claim 6 wherein the transmission device is a wireless transmission device.

8. The chiropractic adjusting instrument as recited in claim 3 wherein the sensing processing unit deactivates the electronic pulse system when a maximum spinal mobility is detected.

9. The chiropractic adjusting instrument as recited in claim 8 further comprising a indicator coupled to the trigger system, electronic pulse system and electromechanical system for status information.

10. The chiropractic adjusting instrument as recited in claim 9 wherein the indicator is selected from the group consisting of visual indicators or sound indicators.

11. The chiropractic adjusting instrument as recited in claim 10 wherein the indicator is at least one light emitting diode.

12. The chiropractic adjusting instrument as recited in claim 11 wherein the at least one light emitting diode indicates power, appropriate preload and electronic pulse mode, and error modes using combinations selected from the group consisting of at least one color, at least one blink and combinations thereof.

13. The chiropractic adjusting instrument as recited in claim 12 wherein the indicator is sound output devices.

14. A method for controlling an electric chiropractic adjusting instrument comprising the steps of:

Initializing a data reset peak detector circuit,

Activating an electrically driven impact head to contact a body at least twice;

Reading the impact head response on a body each time using a sensing device;

Evaluating the sensing device measurements using a sensing processing unit;

Deactivating the electrically driven impact head when the first reading of the sensing device is exceeded by a subsequent reading of the sensing device such that the maximum spinal mobility has been obtained.

15. The method for controlling an electric chiropractic adjusting instrument in claim 14 wherein the maximum spinal mobility has been obtained when the subsequent reading exceeds the first reading by a preset amount.

16. The method for controlling an electric chiropractic adjusting instrument in claim 14 wherein the maximum spinal mobility has been obtained when the subsequent reading exceeds the first reading by at least one percent.

17. The method for controlling an electric chiropractic adjusting instrument in claim 14 wherein the maximum spinal mobility has been obtained when the subsequent reading exceeds the first reading by at least two percent.

18. The method for controlling an electric chiropractic adjusting instrument in claim 14 wherein the maximum spinal mobility has been obtained when the subsequent reading exceeds the first reading by at least five percent.

19. The method for controlling an electric chiropractic adjusting instrument in claim 14 further comprising a step of counting a number times the step of activating the electrically driven impact head to contact a body is performed.

20. The method for controlling an electric chiropractic adjusting instrument in claim 19 wherein if the step of counting exceeds a predetermined number of times between 2 and 24 the gun is deactivated.

21. The method for controlling an electric chiropractic adjusting instrument in claim 14 further comprising the step of transmitting the sensing processing unit readings to a computing device.

22. The method for controlling an electric chiropractic adjusting instrument in claim 14 wherein the sensing output is an accelerometer.

23. The method for controlling an electric chiropractic adjusting instrument in claim 22 wherein the sensing processing unit is coupled to a programmable microprocessor.

24. The method for controlling an electric chiropractic adjusting instrument in claim 23 wherein the sensing processing unit is the programmable microprocessor.

\* \* \* \* \*

# Exhibit E

등록특허 10-1123926



| | |
|---|---|
| (19) 대한민국특허청(KR) | (45) 공고일자    2012년04월13일 |
| (12) 등록특허공보(B1) | (11) 등록번호    10-1123926 |
| | (24) 등록일자    2012년02월28일 |

(51) 국제특허분류(Int. Cl.)
    *A61H 23/02* (2006.01)  *A61N 5/06* (2006.01)
(21) 출원번호    10-2011-0084773
(22) 출원일자    2011년08월24일
    심사청구일자    2011년08월24일
(56) 선행기술조사문헌
    JP2005204777 A
    JP2010534110 A

(73) 특허권자
    **주식회사 에이티시스템**
    경기도 하남시 조정대로 150, 하남아이테코 846 (덕풍동)
(72) 발명자
    **최재민**
    서울특별시 성동구 왕십리로16길 11-8 (성수동1가)
(74) 대리인
    **정태진, 문세환**

전체 청구항 수 : 총  8 항                                                     심사관 :    양성연

(54) 발명의 명칭 **근육 진동 마사지 장치**

(57) 요 약

본 발명은 기계적인 진동을 근육에 전달하여 근육을 이완시켜 줄 수 있도록 하는 근육마사지 장치에 관한 것으로, 더 상세하게는 손으로 잡아 사용이 편리하도록 건(GUN)타입으로 구성된 근육 진동 마사지 장치에 관한 것이다.

본 발명 근육 진동 마사지 장치는 근육자극 진동 마사지장치를 구성함에 있어서, 진동력 제공수단인 모터의 회전력이 수평방향으로 근육자극부재에 작용할 수 있도록 하여, 힘의 전달이 밸런스있게 효과적으로 이루어질 수 있도록 함으로써, 별도의 무게중심축이 불필요하며, 또한 그 구조를 단순화시켜 손잡이부를 더욱 더 슬림화시켜 디자인이 미려하고 사용자가 손쉽게 잡고 사용가능한 근육 자극 마사지장치를 제공하고자 한다.

*대 표 도 - 도2*



*특허청구의 범위*

**청구항 1**

건(gun) 형상의 손잡이부(110)를 갖는 본체(100)로 이루어지고, 본체의(100) 상부는 진동을 발생시키기 위한 모터(200)와 모터(200)의 회전력을 전후 수평 왕복운동으로 변환하여 진동을 발생하기 위한 진동발생수단을 내장하기 위한 공간 및 고정수단이 형성되고, 본체(100)의 하부 손잡이부(110) 내로는 모터의 구동전압을 공급하여 모터를 동작제어하기 위한 모터제어수단이 내장되고 이의 고정수단이 구성되며, 손잡이부의 외측, 손으로 잡아 손가락이 위치하는 곳에는 모터제어수단으로 사용자 동작지령을 제공하기 위한 건 스위치(410)가 형성되며,

상기 진동발생수단은,

일 측으로부터 또 다른 일측방향의 외면으로 회전방향을 따라 나선의 골(311a)이 형성되고 일 측이 모터(200)의 회전축(210)에 수평방향으로 결합되어 회전하여 진동슬라이드부(320)를 수평왕복운동시키기 위한 진동회전부(310)와, 진동회전부(310)에 형성된 나선의 골(311a)에 결합되어 진동회전부(310)가 회전함에 따라 골(311a)의 전체길이만큼의 폭으로 전후 수평왕복운동하는 진동슬라이드부(320)와, 진동슬라이드부(320)의 전단부에 결합되고 본체(100)의 외부로 노출되어 사용자의 근육에 접촉 진동슬라이드부(320)의 진동자극을 제공하는 진동자극부(330)를 포함하여 구성되는 것을 특징으로 하는 근육 진동 마사지 장치.

**청구항 2**

제 1항에 있어서, 상기 진동슬라이드부(320)가 수평왕복운동함에 있어서 좌우 이탈되지 않도록 하기 위한 이탈방지부(340)를 더 포함하여 구성되는 것을 특징으로 하는 근육 진동 마사지 장치.

**청구항 3**

제 1항에 있어서, 건 건스위치(400)의 스위칭에 따라서 모터제어수단의 제어에 따라 동작하여 적외선 온열기능을 제공하기 위한 적외선램프와, 본체(100)의 내면 형상에 대응하는 형상으로 이루어지며, 본체(100)의 입구 내부로부터 결합되어 전면부가 입구를 통하여 외부에 노출된 형태로 구성되어 상기 적외선램프를 고정시키며 적외선램프에서 발생된 적외선 광을 유도하여 사용자의 피부에 조사하기 적외선램프하우징(600)을 더 포함하여 구성되는 것을 특징으로 하는 근육 진동 마사지 장치.

**청구항 4**

제 3항에 있어서, 상기 적외선램프는 적외선LED램프(500)로 이루어지고, 적외선LED램프(500)는 원형의 패널상에 적외선LED가 배열되는 형태로 구성되고, 상기 적외선램프하우징(600)은 원형의 외곽부를 따라 적외선LED가 끼워져 결합되는 적외선램프고정부(610)를 하나 이상 다수개를 일정 간격으로 구성하고, 중앙으로는 슬라이드 샤프트(321)를 통과시키기 위한 샤프트통과홀(620)을 포함하는 관형태로 이루어지는 것을 특징으로 하는 근육 진동 마사지 장치.

**청구항 5**

제 1항에 있어서, 상기 진동회전부(310)는 모터(200)의 회전축(210)과 결합되는 회전축결합부(311b)와 외부로 나선의 골(311a)이 형성된 캠(311)과, 캠(311)이 안정적으로 회전할 수 있도록 회전축결합부(311b)의 그 타측에 결합되는 베어링(312)과, 베어링(312)을 고정하기 위한 베어링고정부(313)를 포함하여 구성되며,

상기 진동슬라이드부(320)는 상기 진동회전부(310)의 골(311a)에 결합되는 베어링(322), 베어링(322)과 슬라이드 샤프트(321)를 연결하는 링커(323), 링커(323)에 의해 수평왕복운동하는 슬라이드 샤프트(321), 슬라이드 샤프트(321)의 전 후단에 결합되는 부시링(324)을 포함하여 구성되는 것을 특징으로 하는 근육 진동 마사지 장치.

**청구항 6**

제 1항 또는 제 5항에 있어서, 상기 슬라이드 샤프트(321)는 링커(323)를 결합하기 위한 링커결합부(321a), 이탈방지부(340)에 구성되는 직각고정핀(342)를 결합하기 위한 이탈방지홈(321b)을 구성하며,

상기 이탈방지부(340)는 모터(200)에 고정되고 상부로 슬라이드 샤프트(321)를 지지하며 수평왕복운동이 가능하

도록 하며 좌우 이탈을 방지하기 위한 수단으로 슬라이드 샤프트(321)의 통과공(341a), 중앙으로 모터(200)의 회전축(210)에 캠(311)을 결합하기위한 캠통과공(341b)이 형성되고, 슬라이드 샤프트(321)의 좌우 이탈을 방지하기 위한 직각고정핀결합부(341c)이 형성된 고정브라켓(341)과, 고정브라켓(341)에 결합지지되고, 슬라이드샤프트(321)에 형성된 이탈방지홈(321b)에 결합되어 슬라이드샤프트(321)가 수평왕복운동 시 좌우 이탈을 방지하기 위한 직각고정핀(342)를 포함하여 구성되는 것을 특징으로 하는 근육 진동 마사지 장치.

### 청구항 7

제 1항에 있어서, 상기 진동자극부(330)는 상기 진동슬라이드부(320)에 교체가능한 구조로 이루어지는 것으로, 생고무 라텍스 또는 실리콘 고무 재질로 이루어지는 것을 특징으로 하는 근육 진동 마사지 장치.

### 청구항 8

제 1항에 있어서, 상기 본체(100)의 고정수단은 상기 모터(200)의 후단으로 슬라이드 샤프트(321)로부터 작용하는 힘을 받쳐주기 위하여 모터받침부(120)를 구성하고, 모터(200)의 전단으로는 상기 회전축(210)의 이탈 방지 및 고정, 그리고 베어링(340)을 고정시켜주기 위한 고정브라켓(341)을 고정하기 위한 브라켓고정부를 포함하는 것을 특징으로 하는 근육 진동 마사지 장치.


### 명 세 서

### 기 술 분 야

[0001]   본 발명은 기계적인 진동을 근육에 전달하여 근육을 이완시켜 줄 수 있도록 하는 근육마사지 장치에 관한 것으로, 더 상세하게는 손으로 잡아 사용이 편리하도록 건(GUN)타입으로 구성된 근육 진동 마사지 장치에 관한 것이다.

### 배 경 기 술

[0002]   근육의 재활을 돕기 위하여 기계적인 진동마사지 치료가 일반적으로 이용되고 있다. 진동 마사지 치료란 기계적인 진동을 치료 목적으로 적용한 것으로, 진동을 인체에 전달하여 세로방향의 파형의 흐름을 만들면서, 혈류를 개선시켜, 수축된 근육조직을 이완시켜 줌으로써, 손상된 근육조직의 재활을 돕게 된다.

[0003]   이외에도 진동을 이용한 근육자극에 의한 효과로는 동통완화, 지방분해 및 미용효과, 혈액순환 증대와 충혈경감, 근육의 긴장완화 등을 얻을 수 있다.

[0004]   이전에는 상기와 같은 진동마사지장치를 병원 또는 재활센터에서나 이용가능했지만, 근래에는 기술개발로 인하여 가정에서 사용함은 물론 휴대이동 가능할 정도로 소형화되면서도 성능은 향상된 다양한 형태의 근육 진동 마사지 장치가 상용화되고 있다.

[0005]   도 1은 대한민국 등록특허 20-0311328호 " 근육자극이완기"를 나타낸다.

[0006]   도 1에서와 같이 종래 근육 자극 마사지장치는 손잡이부(1)에 모터 및 모터의 회전에 따라 회전하도록 형성된 편심회전축을 갖는 편심회전자를 내장하도록 하고, 편심회전자의 회전자가 회전함에 따라서 근육자극부재(2)의 슬라이드축(3)의 내면을 편심회전축이 쳐주면서 슬라이드축(3)이 전후 왕복운동을 하도록 함으로써, 근육자극부재(2)가 근육을 자극시킬 있도록 구성된다.

[0007]   여기서, 종래 근육 자극 마사지장치는 손잡이부(1) 내에 모터 및 모터의 회전에 따라 회전하는 상기 편심회전자 및 이의 지지구조물과 전원회로장치들이 모두구성되어 있어서, 그 두께가 두꺼워질 수 밖에 없어서, 사용자가 손으로 쥐고 치료할 때 몸에 사용하기에는 어려움이 있다.

[0008]   또한, 모터의 회전하는 힘을 편심회전자를 이용하여 슬라이드 부재를 전후 왕복시키도록 하는 기술적 구조에 있어서, 모터의 힘이 수직으로 슬라이드축(3)에 작용함으로써, 이의 밸런스를 잡아주기 위해서 무게중심추(4)을 구성하여야만 한다.


### 발명의 내용

### 해결하려는 과제

등록특허 10-1123926

[0009]    본 발명에서는 이와 같은 종래의 문제점을 개선하기 위한 것으로 근육자극 마사지장치를 구성함에 있어서, 진동
력 제공수단인 모터의 회전력이 수평방향으로 근육자극부재에 작용할 수 있도록 하여, 힘의 전달이 밸런스있게
효과적으로 이루어질 수 있도록 함으로써, 별도의 무게중심축이 불필요하며, 또한 그 구조를 단순화시켜 손잡이
부를 더욱 더 슬림화시켜 사용자가 손쉽게 잡고 사용가능한 근육 자극 마사지장치를 제공하고자 한 것이다.

### 과제의 해결 수단

[0010]    본 발명 근육 진동 마사지 장치는, 건(gun) 형상의 손잡이부를 갖는 본체)로 이루어지고, 본체의 상부는 진동을
발생시키기 위한 모터와 모터의 회전력을 전후 수평 왕복운동으로 변환하여 진동을 발생하기 위한 진동발생수단
을 내장하기 위한 공간 및 고정수단이 형성되고, 본체의 하부 손잡이부 내로는 모터의 구동전압을 공급하여 모
터를 동작제어하기 위한 모터제어수단이 내장되고 이의 고정수단이 구성되며, 손잡이부의 외측, 손으로 잡아 손
가락이 위치하는 곳에는 모터제어수단으로 사용자 동작지령을 제공하기 위한 건 스위치가 형성되며,

[0011]    상기 진동발생수단은,

[0012]    일 측으로부터 또 다른 일측방향의 외면으로 회전방향을 따라 나선의 골이 형성되고 일 측이 모터의 회전축에
수평방향으로 결합되어 회전하여 진동슬라이드부를 수평왕복운동시키기 위한 진동회전부와, 진동회전부에 형성
된 나선의 골에 결합되어 진동회전부가 회전함에 따라 골의 전체길이만큼의 폭으로 전후 수평왕복운동하는 진동
슬라이드부와, 진동슬라이드부의 전단부에 결합되고 본체의 외부로 노출되어 사용자의 근육에 접촉 진동슬라이
드부의 진동자극을 제공하는 진동자극부와, 상기 진동슬라이드부가 수평왕복운동함에 있어서 좌우 이탈되지 않
도록 하기 위한 이탈방지부를 더 포함하여 구성되는 것을 특징으로 한다.

### 발명의 효과

[0013]    본 발명에 따르면 진동을 발생시키기 위한 모터의 회전력을 수평방향으로 제공하도록 함으로써, 그 구조가 간단
하고 밸런스 있는 힘의 전달이 가능하다.

[0014]    또한 종래에서와 같이 모터 및 모터의 회전력 전달을 수직상의 축에 전달하기 위한 구성이 손잡이부에 구성되지
않음으로써, 손잡이부를 슬림하게 구성하여 사용자가 쉽게 잡고 사용이 가능하며 무게 밸런스를 잡아주기 위한
무게중심축이 필요없고 디자인 또한 미려해질 수 있다.

### 도면의 간단한 설명

[0015]    도 1은 종래 근육자극이완기를 나타낸 사시도.

도 2는 본 발명 근육 진동 마사지 장치의 구성을 나타내기 위한 본체 내 상부 구성을 나타낸 도면.

도 3은 본 발명에 있어서, 각 수단들의 결합상태를 보이기 위한 도면.

도 4는 본 발명 근육 진동 마사지 장치의 외관을 보인 사시도.

도 5는 본 발명에 있어서, 적외선램프하우징의 구조를 나타내기 위하여 평면과 측면을 나타낸 도면.

도 6은 본 발명에 있어서, 적외선LED램프의 구조를 나타내기 위하여 평면과 이 평면상에서의 A-A'선단면을 나타
낸 도면.

도 7은 본 발명에 있어서, 진동자극부의 여러형태의 실시 예를 나타낸 도면.

도 8은 본 발명에 있어서, 진동회전부와 진동슬라이드부의 수평이동동작을 설명하기 위하여 진동회전부와 진동
슬라이드부를, 그리고 이탈방지부만을 구분하여 나타낸 도면.

### 발명을 실시하기 위한 구체적인 내용

[0016]    본 발명 근육 진동 마사지 장치를 첨부된 도면 도 2 내지 도 8에 도시된 그 실시 예를 참조하여 그 구조 및 작
용을 설명하면 다음과 같다.

[0017]    건(gun)의 형상의 손잡이부(110)를 갖는 본체(100)로 이루어지고, 본체의(100) 상부는 진동을 발생시키기 위한
모터(200)와 모터(200)의 회전력을 전후 수평 왕복운동으로 변환하여 진동을 발생하기 위한 진동발생수단을 내
장하기 위한 공간 및 고정부가 형성되고, 본체(100)의 하부 손잡이부(110) 내로는 모터의 구동전압을 공급하여
모터를 동작제어하기 위한 모터제어수단이 내장되고 이의 고정수단이 구성되며, 손잡이부(110)의 외측, 손으로

잡아 손가락이 위치하는 곳에는 모터제어수단으로 사용자 동작지령을 제공하기 위한 건 스위치(400)가 형성되며,

[0018]    상기 진동발생수단은,

[0019]    일 측으로부터 또 다른 일측방향의 외면으로 회전방향을 따라 나선의 골(311a)이 형성되고 일 측이 모터(200)의 회전축(210)에 수평방향으로 결합되어 회전하여 진동슬라이드부(320)를 수평왕복운동시키기 위한 진동회전부(310)와, 진동회전부(310)에 형성된 나선의 골(311a)에 결합되어 진동회전부(310)가 회전함에 따라 골(311a)의 전체길이만큼의 폭으로 전후 수평왕복운동하는 진동슬라이드부(320)와, 진동슬라이드부(320)의 전단부에 결합되고 본체(100)의 외부로 노출되어 사용자의 근육에 접촉 진동슬라이드부(320)의 진동자극을 제공하는 진동자극부(330)와, 진동슬라이드부(320)가 수평왕복운동함에 있어서 좌우 이탈되지 않도록 하기위한 이탈방지부(340)를 포함하여 구성된다.

[0020]    그리고 적외선 온열기능을 제공하기 위한 적외선LED램프(500)와, 본체(100)의 내면 형상에 대응하는 원형으로 이루어지며, 본체(100)의 입구 내부로부터 결합되어 전면부가 입구에 끼워져 외부에 노출된 형태로 구성되어 상기 적외선LED램프(500)를 고정시키며, 적외선LED램프(500)에서 발생된 적외선 광을 유도하여 사용자의 피부에 조사하기 위한 적외선플르하우징(600)을 더 포함한다.

[0021]    이와 같은 본 발명은,

[0022]    본체(100)는 건(gun)형상으로 이루어지고 상부에는 모터(200), 모터(100)의 회전력을 수평방향의 진동으로 전환하기 위한 진동발생수단이 구성되고, 손잡이부(110)로는 상기 모터(200)를 회전시키기 위한 모터제어수단이 구성된다.

[0023]    상기 진동발생수단은, 회전력을 제공하기 위한 모터(200)의 전단에 결합되는 진동회전부(310), 진동회전부(310)에 의해 전후 슬라이드 되면서 진동을 발생시키는 진동슬라이드부(320), 진동슬라이드부(320)에 의해 발생되는 진동자극을 사용자에게 전달하는 진동자극부(330)와, 진동슬라이드부(320)의 좌우 이탈을 방지하기 위한 이탈방지부(340)를 포함하여 구성된다.

[0024]    상기 진동발생수단은 모터(200)의 회전축(210)에 결합되고, 모터(200)의 회전축(210) 선단으로 진동회전부(310)가 결합되어 모터(200)의 회전축(210) 회전에 따라서 함께 회전하는 구조로 이루어진다.

[0025]    상기 진동회전부(310)는 모터(200)의 회전축(210)과 결합되는 회전축결합부(311b)와 외부로 나선의 골(311a)이 형성된 캠(311)과, 캠(311)이 안정적으로 회전할 수 있도록 회전축결합부(311b)의 그 타측에 결합되는 베어링(312)과, 베어링(312)을 고정하기 위한 베어링고정부(313)을 포함한다.

[0026]    상기 회전축결합부(311b)는 모터(200)의 회전축(210)이 끼워져 결합되도록 회전축결합홈이 구성되며, 회전축결합홈 내로 결합된 회전축(210)이 회전하면서 겉돌지 않도록 회전축(210)에 결합되는 구조를 포함한다.

[0027]    상기 캠(311)에 형성된 나선의 골(311a)의 전체 폭이 진동슬라이드부(320)의 수평왕복 길이를 나타낸다.

[0028]    상기 캠(311)의 골(311a)에 진동슬라이드부(320)가 결합되어 진동회전부(310)가 회전하게 됨에 따라서 골(311a)을 따라 이동하면서 진동슬라이드부(320)가 수평왕복운동하는 구조로 이루어진다.

[0029]    상기 진동슬라이드부(320)는 상기 진동회전부(310)의 골(311a)에 결합되는 베어링(322), 베어링(322)과 슬라이드 샤프트(321)를 연결하는 링커(323), 링커(323)에 의해 수평왕복운동하는 슬라이드 샤프트(321), 슬라이드 샤프트(321)의 전 후단에 결합되는 부시링(324)으로 구성된다.

[0030]    슬라이드 샤프트(321)는 링커(323)를 결합하기 위한 링커결합부(321a), 이탈방지부(340)에 구성되는 직각고정편(342)를 결합하기 위한 이탈방지홈(321b)를 구성하며, 이탈방지홈(321b)은 슬라이드 샤프트(321)가 전 후 슬라이드 동작할 때 결합된 직각고정편(342)이 걸리지 않도록 전후 슬라이드되는 방향으로 이동하는 거리이상의 길이로 형성된다.

[0031]    상기 진동자극부(330)는 진동슬라이드부(320)의 슬라이드 샤프트(321)의 선단에 결합되어 본체(100)의 입구를 통해 외부로 노출되어 슬라이드 샤프트(321)로부터 발생되는 진동에 따라 사용자의 근육에 진동자극을 전달하는 수단이다.

[0032]    상기 진동자극부(330)는 슬라이드 샤프트(321)에 교체가능한 구조로 이루어지는 것으로, 슬라이드 샤프트(321)에 결합하기 위하여 샤프트결합홈(331)이 구성되며, 도 7에 도시된 바와 같이 마사지용도에 따라서 다양한 형태

등록특허 10-1123926

의 진동자극부(330)를 구성할 수 있다.

[0033]    상기 진동자극부(330)는 사용자의 피부를 보호하고 인체에 무해하며 불쾌감을 주지 않도록 생고무 라텍스 또는 실리콘 고무로  제작된다.

[0034]    상기 이탈방지부(340)는 모터(200)에 고정되고 상부로 슬라이드 샤프트(321)를 지지하며 수평왕복운동이 가능하도록 하며 좌우 이탈을 방지하기 위한 수단으로 슬라이드 샤프트(321)의 통과공(341a), 중앙으로 모터(200)의 회전축(210)에 캠(311)을 결합하기위한 캠통과공(341b)이 형성되고, 슬라이드 샤프트(321)의 좌우 이탈을 방지하기 위한 직각고정핀결합부(341c)이 형성된 고정브라켓(341)과, 고정브라켓(341)에 결합지지되고, 슬라이드샤프트(321)에 형성된 이탈방지홈(321b)에 결합되어 슬라이드샤프트(321)가 수평왕복운동 시 좌우 이탈을 방지하기 위한 직각고정핀(342)를 포함하여 구성된다.

[0035]    상기 본체(100)는 건(gun) 모양의 상부에 모터(200)가 배치되고, 상기 모터(200)의 후단으로 모터받침부(120)를 구성한다.

[0036]    상기 모터받침부(120)는 모터(200)가 슬라이드 샤프트(321)로부터 작용하는 탄성력에 의해 후단으로 힘이 작용하면서 진동이 발생될 때, 모터(200)가 뒤로 밀리지 않도록 하기 위한 수단이다.

[0037]    전단으로는 상기 회전축(210)이 끼워지고, 슬라이드샤프트(321)의 수평왕복운동 및 이탈을 방지하기 위한 고정브라켓(341)을 결합고정하기 위한 브라켓고정부(도면에 도시되지않음)가 구성된다.

[0038]    그리고 고정브라켓(341)의 통과공(341a)을 통하여 슬라이드 샤프트(321)가 전후진 되며, 캠통과공(341b)을 통하여 캠(311)이 모터(200)의 회전축(211)에 결합되며, 고정브라켓(341)에 고정지지된 직각고정핀(342)이 슬라이드샤프트(321)의 이탈방지홈(321b)에 끼워져 슬라이드 샤프트(321)의 좌우 이탈을 방지하게 된다.

[0039]    본체(100)의 입구는 상기 진동자극부(330)가 내부로 부터 끼워져 노출될 수 있도록 통공된 구조로 이루어진다.

[0040]    손잡이부(110) 내에는 상기 모터(200)를 제어하기 위한 모터제어수단이 구성되며, 손잡이부(110)에서 사용자의 손가락이 놓여지는 위치에 모터제어수단에 제어신호를 제공하기 위한 건스위치(400)가 구성된다.

[0041]    상기 건 스위치(400)는 사용자가 손가락으로 눌렀을 때 내부의 동작스위치가 눌려질 수 있도록 구성되며, 사용자가 누르는 힘을 해제할 때 다시 원위치로 복구되도록 건스위치(400)에 탄성력을 제공하는 탄성수단을 구성하는 일반적인 스위치 구조로 이루어지며, 다양한 형태의 스위치구조로 구성할 수 있다.

[0042]    여기서 상기 건스위치(400)는 사용자의 편의를 위하여 종을 쏘는 형태의 스위치로 구성한 것이며, 일반 형태의 스위치로 구성할 수 있다.

[0043]    상기 모터제어수단은 전원공급수단, 전원공급수단으로부터 제공된 전원을 건스위치(400)의 스위칭에 따라 모터(200)에 제공하여 모터를 구동시키기 위한 제어수단에 대한 회로수단을 포함한다.

[0044]    상기 전원공급수단은 충전지(battery) 및 충전지의 충방전수단을 포함하여 구성하는 충전형으로 구성되거나, 전원플러그를 구성하여 콘센트에 전원플러그를 연결하여 사용하는 플러그 타입으로 구성할 수 있다.

[0045]    그리고, 도 5에 도시된 바와 같은 적외선램프하우징(600)을 더 포함한다.

[0046]    상기 적외선램프하우징(600)은 적외선LED램프(500)를 고정시키며, 적외선LED램프(500)에서 발생된 적외선 광을 유도하여 사용자의 피부에 조사하기 위한 수단이다.

[0047]    상기 적외선램프하우징(600)은 본체(100)의 내면 형상에 대응하는 원형으로 이루어지며, 본체(100)의 입구 내부로부터 결합되어 전면부가 입구에 끼워져 외부에 노출된 형태로 구성된다.

[0048]    상기 적외선램프하우징(600)은 원형의 외곽부를 따라 적외선LED램프(500)가 끼워져 결합되는 적외선램프고정부(610)를 하나 이상 다수개를 일정 간격으로 구성하고, 중앙으로는 슬라이드 샤프트(321)를 통과시키기 위한 샤프트통과홀(620)을 포함하는 관형태로 이루어진다.

[0049]    상기 적외선LED램프(500)는 적외선 광을 발생시켜 적외선 온열기능을 제공하기 위한 수단이다.

[0050]    도 6은 적외선LED램프(500)의 일 예를 나타낸 도면으로, 적외선램프하우징(600)에 형성된 적외선램프고정부(610)에 맞추어 결합될 수 있도록 원형의 패널(510)상에 적외선LED램프(500)가 배열되는 형태로 구성될 수 있다.

[0051]    상기 적외선LED램프(500)는 상기 건 스위치(410)의 스위칭동작에 따라 모터제어수단에서 제어되는 본 발명의 실

등록특허 10-1123926

시 예에서와 같이 구성되거나, 별도의 스위치수단을 구성하여 진동마사지와는 별 개의 동작으로 이용하도록 구성할 수 있다.

[0052]    이와 같은 구성으로 이루어지는 본 발명 근육 진동 마사지 장치의 동작 및 그 작용을 상세히 설명하면 다음과 같다.

[0053]    사용자가 건 스위치(410)를 당기게 되면 손잡이부(110) 내에 구성된 모터제어수단의 스위치가 터치되면서 모터(200)에 전원이 공급되어 모터(200)가 회전하게 된다.

[0054]    모터(200)가 회전하면 모터(200)의 회전축(210)에 결합된 캠(311)이 회전하게 된다.

[0055]    진동회전부(310)의 캠(311)에는 나선의 골(311a)이 형성되어 있는 데, 상기와 같이 캠(311)이 회전하게 되면, 캠(311)에 형성된 골(311a)에 결합되어 있는 베어링(322)이 골(311a)을 따라 이동하게 되면서 베어링(322)의 위치가 좌우 폭을 두고 변동되고, 따라서 베어링(322)에 연결된 링커(323)가 좌우 이동하면서 슬라이드 샤프트(321)가 좌우로 수평이동하게 된다.

[0056]    상기와 같이 캠(311)이 회전하면서 캠(311)에 형성된 나선의 골(311a)의 위치가 좌우로 변경됨에 따라서 골(311a)에 결합된 베어링(322)의 위치가 좌우로 이동되면서 슬라이드 샤프트(321)가 좌우 슬라이드하게 되며, 상기와 같은 과정을 반복하면서 진동이 발생하게 된다.

[0057]    도 8은 진동회전부와 진동슬라이드부의 수평이동동작을 설명하기 위하여 진동회전부와 진동슬라이드부, 그리고 이탈방지부만을 구분하여 나타낸 도면이다.

[0058]    이와 같이 발생되는 진동은 사용자의 피부에 접촉된 진동자극부(330)를 통해 피부내 근육에 전달된다.

[0059]    이때 진동자극부(330)는 슬라이드 샤프트(321)에 교체가능한 구조로 구성되어있어서, 용도에 따라서 상기 도 7의 (a) 내지 (d)에 도시된 바와 같은 진동자극부(330)를 선택적으로 교체하여 사용하면 된다.

[0060]    또한 적외선LED램프(500)에서 발광된 적외선 광은 적외선램프하우징(600)을 따라 전면으로 발광하면서 사용자의 피부에 조사되어 적외선 온열기능을 제공하게 된다.

*도면*

*도면1*



등록특허 10-1123926

도면2



도면3



도면4



도면5



도면6



등록특허 10-1123926

도면7



도면8

